*In re* LAMPART

Docket No. 315333. Submitted May 15, 2014, at Traverse City. Decided July 31, 2014, at 9:00 a.m.

Robby Lampart entered a plea of admission to arson in the Family Division of the Gogebic Circuit Court. The court ordered restitution in the amount of $28,210. The court ordered Lampart's mother, Diana Alexandroni, to make payments toward the restitution obligation in the amount of $250 a month. The court further ordered Alexandroni's employer to withhold $62.50 from her weekly wages to satisfy her restitution obligation. Alexandroni subsequently suffered a heart attack and became unemployed. She averred in an affidavit that her only source of income was $730 a month in Social Security disability insurance (SSDI) benefits. She asserted that any attempt by the court to enforce the restitution order would violate 42 USC 407(a), which provides that Social Security benefits are not subject to execution, levy, attachment, garnishment, or other legal process. The court, Joel L. Massie, J., concluded that it could consider the SSDI benefits as income and enforce the restitution order against Alexandroni after the income was in her possession through the court's contempt powers, but lowered Alexandroni's monthly payment obligation to $150 a month. Alexandroni moved for relief from the judgment. The court denied the motion. Alexandroni appealed by delayed leave granted.

The Court of Appeals *held*:

Under 42 USC 407(a), the right of any person to any future payment under 42 USC 401 through 42 USC 434, including SSDI benefits, shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under those sections shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. The protection afforded to money received as Social Security benefits extends before and after the benefits are received. The fact that benefits have been paid and may be on deposit in a recipient's bank account does not shed them of that protection until they are in some way converted into some other kind of asset. The terms "execution," "levy," "attachment," and "garnishment" refer to formal procedures by which one

person gains a degree of control over property otherwise subject to the control of another and generally involve some form of judicial authorization. The term "other legal process" should be understood to be a process much like the processes of execution, levy, attachment, and garnishment. At a minimum, "other legal process" (1) requires the use of some judicial or quasi-judicial mechanism, (2) by which control over property passes from one person to another, (3) in order to discharge or secure discharge of an existing or anticipated liability. In this case, a judicial mechanism was being used to discharge an existing liability. If the trial court were to use its contempt powers so as to cause Alexandroni to satisfy her restitution obligations from her SSDI benefits, the court's actions would constitute the use of a judicial mechanism to pass control over those benefits from one person to another in violation of 42 USC 407(a), because the process employed would fall within the definition of "other legal process." To the extent the trial court's consideration of Alexandroni's SSDI benefits as income resulted in an order of restitution that could only be satisfied from those benefits, the use of the court's contempt powers to enforce the restitution order would violate 42 USC 407(a). The mere specter of a contempt order, however, does not necessarily constitute other legal process under the statute, and might serve a legitimate purpose by providing a mechanism by which an obligor's assets and income can be determined. Alexandroni would be entitled at any contempt hearing, however, to use 42 USC 407(a) as a personal defense if ordered to pay her payments to someone else, or if her payments were ordered to be taken by legal process. If it were determined on remand that Alexandroni's only asset or source of income is her SSDI benefits, 42 USC 407(a) would prohibit the use of legal process, including by a finding of contempt, from reaching those benefits to satisfy the restitution order. If Alexandroni were found to have income or assets aside from her SSDI benefits, that income and assets could be used to satisfy the restitution award. The restitution order itself remained valid. Because Alexandroni may have assets or receive income from other sources in the future, the trial court did not err by refusing to cancel or modify the restitution obligation.

Trial court determination that using the power of contempt to enforce a restitution order would not constitute "other legal process" under 42 USC 407(a) reversed; trial court decision denying Alexandroni's motion to cancel or modify her restitution obligation affirmed; case remanded for further proceedings.

RONAYNE KRAUSE, J., dissenting, would have affirmed the decision of the trial court. The majority's conclusion eliminates the

distinction between the kinds of legal processes that the United States Supreme Court has explained are contemplated by 42 USC 407(a) and other legal processes of any kind. As a result, trial courts will be hamstrung and SSDI recipients will have free rein to scoff at any law unless the violation thereof necessitates incarceration. The term "other legal process" must be read narrowly to mean a process in the nature of garnishment. Accordingly, not all legal processes or legal means of enforcing compliance with some court-ordered obligation will run afoul of the protections of 42 USC 407(a). The power to punish contempt is inherent in the courts and essential to the exercise of their functions. A holding of civil contempt is not an exercise by the court of direct control over the contemnor's money, but rather a personal sanction imposed on the contemnor. Exercising authority over a person is in the nature of something entirely different from garnishment. The protections of 42 USC 407(a) do not extend to precluding courts from exercising their contempt powers to compel compliance with their orders.

CONTEMPT — FAILURE TO COMPLY WITH RESTITUTION ORDER — SOCIAL SECURITY BENEFITS — OTHER LEGAL PROCESS.

Under 42 USC 407(a), the right of any person to any future payment under 42 USC 401 through 42 USC 434, including Social Security disability insurance benefits, shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under those sections shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law; the protection afforded under 42 USC 407(a) to money received as Social Security benefits extends before and after the benefits are received; the term "other legal process" refers to (1) the use of some judicial or quasi-judicial mechanism, (2) by which control over property passes from one person to another, (3) in order to discharge or secure discharge of an existing or anticipated liability; to the extent that a trial court's consideration of Social Security benefits as income results in an order of restitution that can only be satisfied from those benefits, the use of the court's contempt powers to enforce the restitution order would violate 42 USC 407(a).

*A. Dennis Cossi Law Office* (by *A. Dennis Cossi*) for Diana Alexandroni.

Before: BECKERING, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J. Appellant Diana Alexandroni, the
mother and supervisory parent of juvenile respondent
Robby Lampart, appeals by delayed leave granted[1] the
trial court's order denying her motion to modify or
cancel a restitution obligation. We reject certain por-
tions of the trial court's reasoning, and therefore re-
verse that order in part, and remand for further pro-
ceedings. We also affirm the order in part, because we at
this time agree with the trial court's decision not to
cancel or modify the restitution obligation, inasmuch as
Alexandroni may have assets, or may in the future have
sources of income, other than her Social Security dis-
ability insurance (SSDI) benefits, from which her res-
titution obligation can be satisfied.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2007, Lampart, a juvenile at the time, entered a
plea of admission to arson. Restitution was ordered in
the total amount of $28,210. The trial court subse-
quently ordered Alexandroni, on behalf of Lampart, to
pay restitution, pursuant to MCL 712A.30(15), in the
amount of $250 per month. See also *In re McEvoy*, 267
Mich App 55, 57-58; 704 NW2d 78 (2005). The trial
court further ordered Alexandroni's employer to with-
hold $62.50 from her wages each week in order to
satisfy the restitution obligation.

In September 2009, Alexandroni suffered a heart
attack. Her resultant heart condition left her unem-
ployed. At the time of her heart attack, the unpaid
restitution totaled $22,960. Because Alexandroni was
unemployed, the wage garnishment of $62.50 that was
originally ordered by the trial court terminated.

---

[1] *In re Lampart*, unpublished order of the Court of Appeals, entered
November 1, 2013 (Docket No. 315333).

On April 18, 2011, the trial court held a reimbursement hearing regarding Alexandroni's obligation under the restitution order in light of the fact that garnishment of her wages was no longer available. In an affidavit, Alexandroni averred that she was unemployed and that her only source of income was $730 per month in SSDI benefits.[2] Alexandroni argued that under 42 USC 407(a), which provides an antiattachment provision for Social Security benefits, the SSDI benefits were exempt from attachment, garnishment, or other court-imposed obligation. 42 USC 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Alexandroni argued that any attempt to enforce the restitution order would constitute "other legal process" under 42 USC 407(a), and that such attempt would be barred by the statute.

In an opinion and order dated April 27, 2011, the trial court concluded that enforcing a restitution order under the juvenile code, MCL 712A.1 *et seq.*, did not constitute "execution, levy, attachment, garnishment or other legal process." The trial court concluded that it could consider Alexandroni's SSDI benefits as "income" and enforce the restitution order against Alexandroni personally, through the power of contempt, after the income was in her possession. The trial court reasoned that to hold otherwise would have the effect of making Alexandroni exempt from making payments under the

---

[2] Lampart received an additional $545 per month.

restitution order.[3] The court therefore indicated that it would "consider the family's income of $1275" and, noting that "circumstances have changed and the current order may need to be reassessed," that it would schedule a new reimbursement hearing "to determine an equitable payment." That order was not appealed.

On May 12, 2011, the trial court entered an order for reimbursement requiring Alexandroni to pay $150 per month beginning on June 1, 2011, and continuing until the balance was paid in full. That order also was not appealed.

In 2012, Alexandroni filed a motion for relief from judgment under MCR 2.612(C)(1)(d) and (f), seeking to modify or cancel the obligation to make restitution payments. In an opinion and order dated January 25, 2013, the trial court denied that motion, noting that "[t]he crux of this case boils down to whether the Court's action in enforcing a restitution order subject to contempt is 'other legal process' " under 42 USC 407(a). Citing *Washington State Dep't of Social & Health Servs v Guardianship Estate of Keffeler*, 537 US 371; 123 S Ct 1017; 154 L Ed 2d 972 (2003), the trial court applied a narrow definition of the term "other legal process," and observed that it had "not pursued garnishment or attachment like actions in enforcement." Aside from applying a narrow definition of "other legal process," the trial court stated a policy justification for its decision:

> [T]he Court cannot reconcile the arguments with a common sense result. That is, how can a Social Security Disability recipient (as opposed to a recipient of SSI, which is minimal and means tested) be exempt when often their income is greater than the working poor who are subject to

---

[3] The trial court made a similar finding regarding Lampart's Social Security benefits.

enforcement. The guidelines promulgated by the collection statute for juvenile courts, MCL 712A.18(6), specifically mention Social Security Disability benefits as income that can be considered. Those guidelines also start collecting SOMETHING on incomes as low as $100 per week. To allow the exemption argued for would mean that no individual with any court obligation, no speeder, no drunk driver, no felon whose only income was Social Security Disability would ever have to pay restitution or court costs or fines of any nature. That result simply does not make sense. [Citation omitted.]

The trial court denied the motion to modify or cancel Alexandroni's restitution obligation. Noting that Alexandroni had suffered a reduction in household income because of the fact that Lampart was then in placement, such that his SSDI benefits were being received by the state, the trial court indicated that it would "again review the monthly payment status at the next review hearing." It is this order that is the subject of this appeal.

On appeal, Alexandroni requests that this Court "amend[]" the trial court's April 27, 2011 order "to provide that the Social Security benefits of [Alexandroni and Lampart] are exempt," and that the "obligation requiring payment of restitution be canceled" because Alexandroni's sole source of income is her SSDI benefits.

## II. ANALYSIS

Resolution of this issue involves an issue of statutory interpretation, which we review de novo. *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012).

### A. RESTITUTION STATUTE

Under the Michigan Constitution, crime victims are entitled to restitution. Const 1963, art 1, § 24. Under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et*

*seq.*, it is mandatory, not discretionary, for trial courts to order convicted defendants to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012), quoting MCL 780.766(2).[4] The defendant's ability to pay is irrelevant; only the victim's actual losses from the criminal conduct are to be considered. *Id.* at 65; *People v Crigler*, 244 Mich App 420, 428; 625 NW2d 424 (2001) ("Since June 1, 1997, MCL 780.767; MSA 28.1287(767) no longer includes the defendant's ability to pay among the factors to be considered when determining the amount of restitution.").

Under the juvenile code, MCL 712A.1 *et seq.*, restitution also is required, and many of its provisions are substantively identical to those of the CVRA. *In re McEvoy*, 267 Mich App at 63. "The juvenile code, MCL 712A.30, provides for restitution of a loss sustained by a victim of a juvenile offense[.]" *Id.* at 60. An order of restitution under the juvenile code is "a judgment and lien against all property of the individual ordered to pay restitution for the amount specified in the order of restitution." MCL 712A.30(13). If a juvenile is or will be unable to pay a restitution order, "the court may order the parent or parents having supervisory responsibility for the juvenile . . . to pay any portion of the restitution ordered that is outstanding." MCL 712A.30(15). When ordering a parent to pay restitution, however, the trial court "shall take into account the financial resources of the parent and the burden that the payment of restitution will impose, with due regard to any other moral or legal financial obligations that the parent may have."

---

[4] MCL 780.766 concerns restitution following conviction of a felony. MCL 780.794 is the similarly mandatory statute in the CVRA pertaining to juvenile adjudications.

MCL 712A.30(16). Regarding enforcement, MCL 712A.30(13) provides that "[a]n order of restitution may be enforced by the prosecuting attorney, a victim, a victim's estate, or any other person or entity named in the order to receive the restitution in the same manner as a judgment in a civil action or a lien."

### B. 42 USC 407(a)

Alexandroni contends that 42 USC 407(a) prohibits a state court from enforcing the restitution order against her because her sole income is her SSDI benefits. 42 USC 407(a) acts as an antiattachment statute for Social Security benefits, and provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

The protection afforded to money received as Social Security benefits extends before and after the benefits are received. *Philpott v Essex Co Welfare Bd*, 409 US 413, 415-417; 93 S Ct 590; 34 L Ed 2d 608 (1973). See also *State Treasurer v Abbott*, 468 Mich 143, 155; 660 NW2d 714 (2003); *Whitwood, Inc v South Blvd Prop Mgt Co*, 265 Mich App 651, 654; 701 NW2d 747 (2005). The fact that the payments have been made does not make them lose their character as Social Security benefits or make them subject to legal process. To the contrary, the protections of 42 USC 407(a) apply, by their terms, to "moneys *paid* or payable" (emphasis added); the fact that benefits have been paid and may be on deposit in a recipient's bank account does not shed them of that protection until they are in some way

converted into some other kind of asset. *Philpott*, 409
US at 415-417. Thus, even after a recipient receives
SSDI benefits and deposits them into a bank account,
the SSDI benefits are still protected by 42 USC 407(a).
*Whitwood*, 265 Mich App at 654. When a state court
order attaches to Social Security benefits in contraven-
tion of 42 USC 407(a), the attachment amounts to a
conflict with federal law, and such a conflict is one "that
the State cannot win." *Bennett v Arkansas*, 485 US 395,
397; 108 S Ct 1204; 99 L Ed 2d 455 (1988). Other
jurisdictions have held that a state court[5] cannot order
restitution to be paid from a defendant's Social Security
benefits. See, e.g., *State v Eaton*, 323 Mont 287, 294;
2004 Mont 283; 99 P3d 661 (2004).[6]

### C. OTHER LEGAL PROCESS

In the case at bar, it appears undisputed that, at least
as of the trial court's April 27, 2011 order, Alexandro-
ni's only income came from her SSDI benefits. It is also
undisputed that Alexandroni's SSDI benefits were not

---

[5] 18 USC 3613(a) provides:

The United States may enforce a judgment imposing a fine in
accordance with the practices and procedures for the enforcement
of a civil judgment under Federal law or State law. Notwithstand-
ing any other Federal law (including section 207 of the Social
Security Act), a judgment imposing a fine may be enforced against
all property or rights to property of the person fined[.]

This provision also applies to the United States when it seeks enforce-
ment of restitution orders. 18 USC 3613(f). Accordingly, although state
courts may not enforce restitution orders or fines against an individual's
Social Security benefits, "[t]he United States may enforce" fines or
restitution orders against an individual's Social Security benefits. 18
USC 3613(a) and (f) (emphasis added).

[6] When interpreting federal statutes, we may look to decisions from
other jurisdictions for guidance. See *Abela v Gen Motors Corp*, 469 Mich
603, 606-607; 677 NW2d 325 (2004).

subject to direct execution, levy, attachment, or garnishment, nor did the trial court employ any of those mechanisms. Rather, the issue is whether the trial court's decision to consider Alexandroni's SSDI benefits, after they were received, as income reachable through enforcement of the restitution order under the court's powers of contempt, amounted to "other legal process" and thus violated 42 USC 407(a).

In *Keffeler*, 537 US at 382-386, the United States Supreme Court had occasion to interpret the phrase "other legal process" as it is used in 42 USC 407(a). Before doing so, the Court examined the terms " 'execution, levy, attachment, [and] garnishment,' " and explained that "[t]hese legal terms of art refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization." *Id.* at 383. Noting that the term "other legal process" followed the use of those more specific terms, the Court concluded that 42 USC 407(a) uses the term "other legal process" restrictively. *Id.* at 384. The Court employed the interpretive canons of *noscitur a sociis* and *ejusdem generis*, under which when "general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* at 384 (citations and quotation marks omitted). Thus, the Court concluded, the term "other legal process"

> should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure

discharge of an allegedly existing or anticipated liability. [*Id.* at 385.]

The Court explained that its definition was consistent with definitions of "other legal process" that were contained in the Social Security Administrator's Program Operations Manual System (POMS). *Id.* One such definition explained "other legal process" as " 'the means by which a court (or agency or official authorized by law) compels compliance with its demand; generally, it is a court order.' " *Id.*, quoting POMS GN 02410.001 (2002). Elsewhere, the POMS defined "other legal process" as " 'any writ, order, summons or other similar process *in the nature of garnishment.*' " *Id.*[7]

In applying *Keffeler*, it is important to note the particular circumstances that were presented in that case. Specifically, Washington's Department of Social

---

[7] The Supreme Court in *Keffeler* made clear that its definition of "other legal process" was a product of *statutory* interpretation, which was merely "confirmed" by the "legal guidance" in the POMS. *Keffeler*, 537 US at 385. Obviously, revisions over time to the POMS do not alter the statute, or the Supreme Court's interpretation of it in *Keffeler*. We note, in any event, that the current version of POMS GN 02410.200 (2006) (entitled "Garnishment"), which relates to a specific statutory exception for enforcing child support or alimony obligations, defines "legal process" for that purpose as "any writ, order, summons, or notice to withhold . . . or other similar process in the **nature of garnishment**." Also, POMS GN 02410.001 (2014) (entitled "Assignment of Benefits") applies generally to the statute's sections that "prohibit the transfer of control over money to someone other than the beneficiary, recipient, or the representative payee." Whereas that provision formerly defined "legal process" as quoted in *Keffeler*, 537 US at 385, the current version reflects no definition, but instead states generally that, apart from certain exceptions that are not applicable here, 42 USC 407(a) "protect[s] payments as long as we can identify them as [Social Security benefits]." *Id.* The provision cites as an example "a situation in which [Social Security benefits] are the only direct deposit payments in the account," and notes that a "beneficiary or recipient can use [42 USC 407(a)] as a personal defense if ordered to pay his or her payments to someone else, or if his or her payments are ordered to be taken by legal process." *Id.*

and Health Services provided foster care for children who were in need of such care, some of whom were recipients of Social Security benefits. The department was the "representative payee" for those children and, as such, the department directly received the children's Social Security benefits. The suit alleged that the department's use of those benefits to reimburse itself for the costs of foster care violated 42 USC § 407(a).

After defining the term "other legal process," the Supreme Court rejected the notion that the department's "efforts to become [the children's] representative payee and its use of [their] benefits in that capacity" fit within the definition. *Id.* at 386. Rather, "the department's reimbursement scheme operates on funds already in the department's possession and control, held on terms that allow the reimbursement." *Id.*

It is significant that the alleged "legal process" in *Keffeler* involved no resort whatsoever to the judicial process. For that reason, the Court contrasted the situation before it with one where there was "utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Id.* at 385. As the Supreme Court ruled, "other legal process" (1) requires the use of some judicial or quasi-judicial mechanism, (2) by which control over property passes from one person to another, (3) in order to discharge or secure discharge of an existing or anticipated liability.

Unlike in *Keffeler*, we find that a judicial mechanism is being used here. Indisputably, resort is being made to the courts to secure payment. We further find that the judicial mechanism is being used to secure the discharge of an existing liability, i.e., restitution. The

question, therefore, is whether it is being used to pass control over property from one person to another, in a manner that runs afoul of 42 USC 407(a).

We find that the reasoning of the trial court, if effectuated through its contempt powers so as to cause Alexandroni to satisfy her restitution obligations from her SSDI benefits, would be the use of a judicial mechanism to pass control over those benefits from one person to another. Thus, it would constitute "other legal process" that is prohibited under 42 USC 407(a). The process by which the trial court would enforce the restitution order would be the employment of its civil-contempt powers. Civil contempt is defined as "[t]he failure to obey a court order that was issued for another party's benefit." *Black's Law Dictionary* (9th ed), p 30. "A civil-contempt proceeding is coercive or remedial in nature." *Id.*

When used in this manner, the court's use of its civil-contempt powers to enforce a restitution order would act as a process much like the processes of execution, levy, attachment, and garnishment, because in that context, the process would involve a formal procedure by which the restitution victim, through the trial court, would gain control over Alexandroni's SSDI benefits. See *Keffeler*, 537 US at 383-385. Indeed, *Keffeler* noted that the POMS defined "legal process" as it was used in 42 USC 407(a) as "the means by which a court . . . compels compliance with its demand; generally, it is a court order." *Id.* at 385 (citation and quotation marks omitted).[8] In this case, the court's

[8] As noted, the current version of the POMS does not expressly use this definition, but it continues to describe 42 USC 407(a) as generally providing protection to Social Security benefits, and as allowing the recipient to use 42 USC 407(a) "as a personal defense if ordered to pay his or her payments to someone else, or if his or her payments are ordered to be taken by legal process." POMS GN 02410.001 (2014).

demand was the restitution order, and the court would compel compliance with that demand through its civil-contempt powers. Consequently, if the trial court were in fact to use its contempt powers in a manner as would compel Alexandroni to satisfy her restitution obligations using her SSDI benefits, we would find that the process employed falls within the definition of "other legal process" as the term is used in 42 USC 407(a).

In this case, it appears undisputed that Alexandroni's only source of income, at least as of the April 27, 2011 trial court order, was her SSDI benefits. The trial court clearly was aware of this, and nonetheless decided to consider her SSDI benefits as income for purposes of fashioning a restitution order subject to contempt. While we find no error merely in the trial court's consideration of Alexandroni's SSDI benefits as income, because 42 USC 407(a) does not directly proscribe such consideration, we hold that, to the extent the trial court's consideration of those benefits results in an order of restitution that could only be satisfied from those benefits, the use of the court's contempt powers then would violate 42 USC 407(a). As noted, the protection afforded to SSDI benefits extends after those benefits are received. *Philpott*, 409 US at 415-417; *State Treasurer*, 468 Mich at 155; *Whitwood*, 265 Mich App at 654. See also *United States v Smith*, 47 F3d 681, 684 (CA 4, 1995) (holding, under a federal statute employing similar language to 42 USC 407(a), that a court could not order restitution against benefits after they were received because "[t]he government should not be allowed to do indirectly what it cannot do directly[,]" meaning that it could not require the defendant "to turn over his benefits as they are paid to him"). As we explained in *Whitwood*, 265 Mich App at 654:

> Plainly, pursuant to 42 USC 407(a), money received as
> social security benefits is not subject to execution or
> garnishment even after received and deposited by the
> recipient. Therefore, the trial court clearly erred when it
> found that the protection against garnishment ended when
> the social security proceeds were deposited into defen-
> dants' account.

It appears to us that the trial court carefully avoided
holding Alexandroni in contempt, yet came perilously
close to using the threat of its contempt powers to
compel Alexandroni to satisfy her restitution obliga-
tions from her SSDI benefits, which would violate 42
USC 407(a). On remand, the trial court should be
careful to avoid any order that in fact would compel
Alexandroni to satisfy her restitution obligation from
the proceeds of her SSDI benefits. That said, the
current record does not reflect whether Alexandroni
possesses any assets, other than as generated by her
SSDI benefit income, from which her restitution might
be satisfied. Nor does the record reflect whether Alex-
androni's income remains solely her SSDI benefits, as
her income and income sources conceivably could
change over time. Those are matters that the trial court
should explore on remand.

We note that it could be argued that, in imposing a civil
contempt, a court does not touch a contemnor's money
directly, but rather imposes a personal sanction on the
contemnor that will be lifted if the contemnor chooses to
comply. In other words, civil contempt imposes a *choice*;
perhaps a choice in which neither alternative is appealing,
but nonetheless a choice that the contemnor is in fact free
to make. However, we find this argument not to be
compelling when the circumstances are such that a con-
tempt finding necessarily requires a contemnor to satisfy
the legal obligation that is the subject of the contempt
order by invading a monetary source that the court is not

allowed to reach directly. In those circumstances, the contempt order would be the functional equivalent of an order directly reaching the funds, such that labeling the order as one of "contempt" rather than "garnishment" would exalt form over substance and ignore the reality of the circumstances. See *In re Bradley Estate*, 494 Mich 367, 387-388; 835 NW2d 545 (2013) (holding that the substance of an action labeled a civil-contempt indemnification action was a claim for tort liability despite its label).

Given that the trial court in this case has not yet held Alexandroni in contempt, has not made a determination with regard to whether she has any other assets (apart from any that are proceeds of her SSDI benefits) from which restitution may be satisfied, and has not made any recent determination of her income sources to ascertain whether any exist apart from her SSDI benefits, we decline to determine whether circumstances exist that might warrant a contempt order at this time. However, on remand, the trial court should follow our direction in this opinion, to appropriately (and perhaps periodically) ascertain Alexandroni's assets and sources of income, perhaps through a contempt hearing,[9] and to enter further orders as appropriate, while avoiding any directive, either explicit or otherwise, that will in fact cause Alexandroni to have to invade her SSDI benefits (or the proceeds thereof) to satisfy her continuing restitution obligation.

Finally, we note the differing approaches of other state and federal circuit courts regarding whether the mere threat of contempt (as arguably already exists in

---

[9] A contempt hearing can be a proper mechanism for ascertaining a person's assets or income for the purpose of satisfying a legal obligation. See, e.g., *Causley v LaFreniere*, 78 Mich App 250, 251; 259 NW2d 445 (1977); *Moncada v Moncada*, 81 Mich App 26, 27-28; 264 NW2d 104 (1978).

this case) itself amounts to "other legal process" under 42 USC 407(a). For example, in *Chambliss v Buckner*, 804 F Supp 2d 1240, 1255-1256 (MD Ala, 2011), the United States District Court for the Middle District of Alabama determined that the plaintiff, Dexter A. Chambliss, from whom the Alabama Department of Human Resources sought child support payments, could not cite 42 USC 407(a) as a means to avoid a contempt hearing. In that case, Chambliss sought to avoid the hearing altogether and merely alleged, without providing support, that Social Security benefits were his only source of income. *Id*. Similarly, in *Danielson v Evans*, 201 Ariz 401, 412-413; 36 P3d 749 (Ariz App, 2001), the court held that a contempt order requiring the defendant, Donald Evans, to pay attorney fees to the plaintiff, Susan Danielson, did not violate 42 USC 407(a). Significantly, however, the court did not expressly require Evans to satisfy his obligations with his SSDI benefits. *Id*.

By contrast, the court in *Becker Co Human Servs v Peppel*, 493 NW2d 573, 575 (Minn App, 1992), concluded that "an implied or express threat of formal legal sanction constitutes a 'legal process' within the meaning of section 407(a)." The trial court in that case had issued a child support order based on "the only source of income available to [the mother]: her [Supplemental Security Income (SSI)] benefits of $407 per month,"[10] and its order expressly stated that the mother "would be held in contempt if she failed to comply." *Id*. at 574. Consequently, the appellate court held that the trial court's "threat to hold [the mother] in contempt cer-

---

[10] Although 42 USC 407(a) does not itself distinguish between SSDI benefits and SSI benefits, the *Becker* Court stressed that SSI benefits (unlike SSDI benefits, as the trial court in this case correctly noted) are intended to protect indigent persons. *Becker*, 493 NW2d at 574.

tainly qualifies as a legal process under section 407(a)." *Id*. at 575. See also *Fetterusso v New York*, 898 F2d 322, 328 (CA 2, 1990) (stating in dicta that "Congress intended the words 'or other legal process' to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions"); *First Nat'l Bank & Trust Co of Ada v Arles*, 816 P2d 537, 541; 1991 Okla 78 (Okla, 1991) ("The contempt action was the procedure by which the court was attempting, through legal channels, to obtain jurisdiction over [the defendant] and force repayment of a . . . debt. As such, it is a 'legal process' forbidden by Section 407(a).").

Although we find that a contempt order that would cause Alexandroni to satisfy her restitution obligations from her SSDI benefits would be the use of "other legal process" in contravention of 42 USC 407(a), we decline to conclude that the mere specter of a contempt hearing necessarily constitutes such "other legal process." That is, although we recognize that there is some level of threat and coercion inherent in a prospective contempt proceeding itself, the specter of contempt also can serve the legitimate purpose of providing a mechanism by which an obligor's assets and income can be determined. See *Causley v LaFreniere*, 78 Mich App 250, 251; 259 NW2d 445 (1977); *Moncada v Moncada*, 81 Mich App 26, 27-28; 264 NW2d 104 (1978). As noted in the current version of the POMS, Alexandroni is entitled at any contempt hearing to use 42 USC 407(a) "as a personal defense if ordered to pay . . . her payments to someone else, or if . . . her payments are ordered to be taken by legal process." POMS GN 02410.001 (2014).

We also note that the trial court found, as a matter of policy, that SSDI benefits should be used to satisfy restitution or court-imposed fines because SSDI ben-

efits are not awarded on the basis of need. The trial court determined that SSDI benefits should not be exempt from satisfying costs or fines because, unlike a recipient of SSI benefits, an SSDI recipient's benefits are not based on need, and may in certain instances be "greater than the working poor who are subject to enforcement." The trial court correctly recognized that SSDI benefits, unlike SSI benefits, are not based on need. *Mathews v Eldridge*, 424 US 319, 340-341; 96 S Ct 893; 47 L Ed 2d 18 (1976). However, the trial court's reasoning is flawed. 42 USC 407(a) represents a clear choice by Congress to exempt *all* Social Security benefits, whether from SSDI or SSI, from any legal process, save for a few enumerated exceptions not at issue in this case. See *Bennett*, 485 US at 398 (explaining that 42 USC 407(a) demonstrates Congress's "clear intent . . . that Social Security benefits not be attachable"); *Philpott*, 409 US at 417 (explaining that 42 USC 407(a) acts as a "broad bar against the use of any legal process to reach *all social security benefits*") (emphasis added). Accordingly, regardless of whether Alexandroni's SSDI benefits were based on need, those benefits could not be used to satisfy court-ordered restitution.

Although the trial court questioned the "sense" of that result, policymaking, whether sensible or not, is the province of the legislative branch of government, not the judicial. See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 581; 702 NW2d 539 (2005). Consequently, the "sense" of the policy, from a policymaking perspective, is not ours to judge.

If it were determined that Alexandroni's only asset, or source of income, is and remains from SSDI benefits, 42 USC 407(a) prohibits the use of legal process— including by a finding of contempt—from reaching those benefits to satisfy the restitution order. See

*Philpott*, 409 US at 417. If, however, Alexandroni is found to have income aside from her SSDI benefits, or other assets that are derived from other sources, that income or those assets could be used to satisfy the restitution award. The restitution order itself remains valid. Indeed, Alexandroni's receipt of SSDI benefits does not immunize her from the restitution order; rather, it merely prohibits the trial court from using legal process to compel satisfaction of the restitution order from those benefits. Because it is possible that Alexandroni may have assets or may receive income from other sources in the future, we affirm the trial court's refusal to cancel or modify Alexandroni's restitution obligation.

The trial court's contempt powers similarly remain a valid tool in enforcing the restitution order, and our decision today should not be read otherwise. Again, a contempt hearing can be an appropriate vehicle for determining income and assets from which the restitution order may properly be enforced. See *Causley*, 78 Mich App at 251; *Moncada*, 81 Mich App at 27-28. However, the trial court may not compel Alexandroni to satisfy her restitution obligation out of her SSDI benefits, by a contempt finding or other legal process, because Alexandroni is entitled to the protections of 42 USC 407(a).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Beckering, P.J., concurred with Boonstra, J.

Ronayne Krause, J. (*dissenting*) I respectfully dissent and would affirm the trial court. I believe that the majority's conclusion eliminates the distinction be-

tween the kinds of legal processes that the United States Supreme Court has explained are contemplated by 42 USC 407(a) and other legal processes of any kind, and as a result trial courts will be hamstrung and Social Security Disability Insurance (SSDI) recipients will have essentially free rein to scoff at any law unless the violation thereof necessitates incarceration. I do not believe the plain language of the statute reflects an intent by Congress to achieve such an absurd result, so I would not create it.

The majority's recitation of the facts and the relevant statutes and caselaw requires no repetition. Where I part ways is with the majority's conclusion that 42 USC 407(a) reflects a choice to exempt SSDI benefits from *any* legal process not explicitly enumerated as an exception. The United States Supreme Court emphatically explained that the term "other legal process" in that statute would be a way in which a court compels compliance with some requirement, but also that any such process would be " '*in the nature of garnishment*,' " *Washington State Dep't of Social & Health Servs v Keffeler*, 537 US 371, 385; 123 S Ct 1017; 154 L Ed 2d 972 (2003), quoting the Social Security Administration's Program Operations Manual System (POMS) GN 02410.200 (2002). The United States Supreme Court further opined that "other legal process" should be defined narrowly rather than "in abstract breadth." *Keffeler*, 537 US at 385.

As the majority correctly notes, under 42 USC 407(a), "moneys *paid*" (emphasis added) are also not subject to "execution, levy, attachment, garnishment, or other legal process"; the fact that such paid benefits are on deposit in a recipient's bank account does not shed them of that protection until they are in some way converted into some other kind of asset. *Philpott v*

*Essex Co Welfare Bd*, 409 US 413, 415-417; 93 S Ct 590; 34 L Ed 2d 608 (1973). The protection against legal processes under 42 USC 407(a) therefore continues after the benefits are paid. *In re Vary Estate*, 401 Mich 340, 346-348; 258 NW2d 11 (1977).

Nevertheless, the United States Supreme Court observed that the terms " 'execution, levy, attachment, [and] garnishment' "are "legal terms of art" referring to "formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization." *Keffeler*, 537 US at 383. It concluded that "other legal process" should therefore refer to the same kinds of processes. *Id.* at 384-385. Indeed, the Court emphasized that simply because some manner of legal process is involved does *not* mean that "other legal process" *within the meaning of 42 USC 407(a)* is at issue. *Id.* at 384. In view of this "restrictive understanding of 'other legal process,' " *id.* at 386, it is clear that not all legal processes or legal means of enforcing compliance with some court-ordered obligation will run afoul of the protections of 42 USC 407(a). The consistent theme is that courts may not directly assume control over the money that comes into a person's possession and control through SSDI payments, whether before or after those moneys are transferred.

The majority accurately notes that the factual scenario in *Keffeler* did not entail a party resorting to judicial process. That does not, in my opinion, invalidate any of the Court's reasoning. Beyond that, the majority apparently makes an end run around the Court's straightforward construction by concluding that *any* process that would have the ultimate result of conveying any portion of a recipient's SSDI proceeds

into the hands of a court must be in the nature of garnishment. I simply cannot agree with that conclusion. The exercise of a trial court's contempt power is not in the same nature as the "other legal process" contemplated by 42 USC 407(a).

The power to punish contempt has always been considered inherent in courts and "essential to the exercise of their functions" or "the laws would be partially and imperfectly administered." See *United States v Sheldon*, Case No. 1315 (Mich Terr Sup Ct, 1829) (opinion by CHIPMAN, J.), in 5 Blume, Transactions of the Supreme Court of the Territory of Michigan 1825-1836, pp 337, 344-345. This power was regarded as being "inherent in, and as ancient as, courts themselves," and, critically, in the nature of "attachment *of the offender* . . . ." *In re Chadwick*, 109 Mich 588, 596-597; 67 NW 1071 (1896) (citation and quotation marks omitted) (emphasis added). A holding of contempt calculated to induce compliance with a court order—the situation at bar—is civil contempt, as distinguished from criminal contempt, which would be intended to punish some manner of misconduct. *Spalter v Wayne Circuit Judge*, 35 Mich App 156, 160-161; 192 NW2d 347 (1971). As the majority notes, a holding of civil contempt is not an exercise by the court of direct control over the contemnor's money, but rather is a personal sanction imposed on the contemnor him- or herself that the contemnor holds the power to lift upon payment.

Unlike the majority, however, I do not believe this distinction to be semantic pettifoggery without real-world relevance. The legal processes listed in the statute and discussed by the United States Supreme Court involved processes that either bypassed the SSDI recipient entirely or otherwise assumed control over the

money itself. Exercising authority over a person is in the nature of something entirely different from garnishment. Under a narrow reading of what 42 USC 407(a) means by "other legal process," as the United States Supreme Court has held is appropriate, the protections of that statute do not extend to precluding courts from exercising their contempt powers to compel compliance with their orders.

That being said, I wish to emphasize that the trial court apparently determined that Alexandroni is indigent and consequently waived or suspended her payment of fees pursuant to MCR 2.002(D). Although ability to pay is not a consideration for determining the obligation to pay restitution, present income and resources *are* considerations under the guidelines for making actual payments thereon. See MCL 712A.18(6); *In re Juvenile Commitment Costs*, 240 Mich App 420, 441-443; 613 NW2d 348 (2000). Incarceration for civil contempt is limited to the extent the contemnor is actually able to comply with the order or otherwise purge the contempt. *Shillitani v United States*, 384 US 364, 371; 86 S Ct 1531; 16 L Ed 2d 622 (1966); *People v Johns*, 384 Mich 325, 333; 183 NW2d 216 (1971) (stating that the opportunity to punish someone held in civil contempt for refusing to answer the questions of a grand jury expires with the grand jury). Although *Shillitani* and *Johns* discussed civil contempt holdings used to enforce compliance with grand juries, the same principle applies here: if a person subject to a financial obligation to the court is unable to make payments because of destitution, the court can no more subject the person to contempt than require payments. If that individual claims destitution, he or she is entitled to a hearing and determination thereof, and payments cannot be required unless or until the person is actually able to pay them. Put another way, the purpose and

function of civil contempt is to deter *refusals* to comply
with orders, not necessarily mere failures to comply. *In
re Moroun*, 295 Mich App 312, 339-341; 814 NW2d 319
(2012) (opinion by K. F. KELLY, J.). SSDI recipients are
in no greater danger of debtors' prison than any other
potential contemnor, which is to say, they are not in any
such danger.

Consequently, the trial court may not compel pay-
ments in the instant case at this time by using its
contempt power, because insofar as I am aware, Alex-
androni would not be able to comply. An inability to
survive on the funds remaining after payment is, in my
opinion, functionally identical to a lack of the funds
altogether under any legal system that purports to have
any concern for justice. However, the mere fact that her
sole source of income is SSDI payments does not *per se*
immunize her from the theoretical possibility of being
ordered to make payments on pain of contempt. To hold
otherwise would be essentially to neuter an inherent
function of the courts and immunize recipients of SSDI
benefits—even if they have funds to make payments—
from having to pay traffic tickets, parking tickets, fines
for misdemeanors, and indeed a great many other fees
and financial obligations. Payment of SSDI benefits is
not based on indigency. And it is incompatible with
justice to prevent the courts from being able to require
persons who can comply with court orders from doing
so. Victims in any case, and perhaps here in this case,
may be on SSDI. I simply refuse to hold that victims
should pay for crimes committed against them if a
defendant has the ability to pay. The law does not
require that result, and I will not impose that result on
the victims of crime in this state.

I would therefore affirm.