IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77413-1-I |
| Respondent, | ) ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MATHEW CLARK HEALEA, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: February 25, 2019 |
| | ) | |

SMITH, J. — Mathew Healea appeals his conviction for fourth degree domestic violence assault. Healea argues that the trial court erred by excluding a defense witness's testimony, refusing to instruct the jury on the affirmative defense of lawful defense of another, and denying his request for a missing witness instruction. He also argues that the trial court violated the antiattachment provision of the Social Security Act, 42 U.S.C. § 407(a), by imposing mandatory legal financial obligations (LFOs) when his only income is from Social Security disability benefits.

We affirm Healea's conviction. The expected defense witness testimony was not relevant to the assault, the evidence presented did not support an instruction on the lawful defense of another, and a missing witness instruction was not warranted because the absent witness was not peculiarly available to the State. But we remand to the trial court to amend the judgment and sentence

to specify that the LFOs imposed may not be satisfied out of any funds subject to the antiattachment statute.

FACTS

On August 20, 2016, Pamela Aguilar and Harvey Avalos were driving down Maple Valley Highway when they saw a man and woman, later identified as Healea and C.W., on the side of the road. C.W. had her thumb out. Aguilar and Avalos decided to pick up C.W., but before C.W. could get into the car, Healea grabbed her by the neck and arm and dragged her down a steep embankment away from the road and toward a residence.

C.W. screamed for help, and Avalos called 9-1-1. Aguilar watched C.W. try to fight off Healea, grabbing at the ground while Healea tried to pick her up. C.W. pushed and kicked Healea and screamed that Healea was going to kill her. Healea attempted to throw C.W. over his shoulder multiple times but was unsuccessful. Eventually, C.W. dropped a backpack she was carrying onto the ground. Healea yelled at Aguilar and Avalos several times to go away. C.W. then grabbed on to a tree, and Healea hit her in the face and on the chest in an attempt to loosen her grip on the tree. When that failed, Healea left C.W. to grab her discarded backpack. At that point, C.W. ran to Aguilar's car and Aguilar drove C.W. to a store, where they were met by first responders.

The State charged Healea by information with one count of unlawful imprisonment (domestic violence) and one count of assault in the fourth degree (domestic violence). Aguilar and several of the first responders testified at trial. C.W. and Healea did not testify, but defense counsel argued that Healea

restrained C.W. to protect her from hitchhiking with strangers while high on methamphetamines. The jury found Healea guilty of assault in the fourth degree (domestic violence) but acquitted him of the unlawful imprisonment charge. At sentencing, the trial court imposed $600 in mandatory LFOs.

Healea appeals.

## ANALYSIS

### Admission of Defense Witness Testimony

Healea argues that the trial court violated his right to present a defense by excluding the testimony of Deputy Jeffrey Dorsch, who would have testified that C.W. had a history of self-harm, which is relevant to her credibility and capacity. We disagree.

We review a trial court's evidentiary rulings for abuse of discretion. State v. Clark, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). A court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable reasons or on untenable grounds. State v. Black, 191 Wn.2d 257, 266, 422 P.3d 881 (2018). Where the trial court excludes relevant defense evidence, we review de novo whether the exclusion violates the defendant's constitutional right to present a defense. Clark, 187 Wn.2d at 648-49; State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

"'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" Jones, 168 Wn.2d at 720 (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). A defendant's right to an opportunity to be heard

in his defense, including the right to offer testimony, is basic but not absolute. Jones, 168 Wn.2d at 720. "Evidence that a defendant seeks to introduce 'must be of at least minimal relevance.'" Jones, 168 Wn.2d at 720 (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). "Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence." Jones, 168 Wn.2d at 720. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. A trial court properly excludes evidence that is "remote, vague, speculative, or argumentative because otherwise 'all manner of argumentative and speculative evidence will be adduced,' greatly confusing the issue and delaying the trial." State v. Kilgore, 107 Wn. App. 160, 185, 26 P.3d 308 (2001) (quoting State v. Jones, 67 Wn.2d 506, 512, 408 P.2d 247 (1965)), aff'd on other grounds, 147 Wn.2d 288, 53 P.3d 974 (2002)).

Here, Healea made an offer of proof that Deputy Dorsch would testify that he performed a mental health check on C.W. on February 24, 2016, six months before the assault. At the time, C.W. said she wanted to kill herself and she was involuntarily committed as a result. Healea argued that this testimony was relevant because it proved that C.W. had a history of self-harm and that Healea's decision to protect C.W. from a risky activity like hitchhiking was reasonable. The trial court did not allow Deputy Dorsch to testify, explaining that "[h]ad it occurred on the same day of the event, I would be much more inclined to see it as relevant evidence."

4

The trial court did not abuse its discretion by excluding Deputy Dorsch's testimony. Testimony about an isolated incident involving C.W.'s mental state six months before the assault is too remote to be relevant to Healea's actions on the date of the assault. Therefore, the exclusion of that testimony did not violate Healea's right to present a defense.

Relying on Jones, Healea argues that the trial court should have admitted Deputy Dorsch's testimony because it was of "high probative value." Jones, 168 Wn.2d at 721. He is mistaken. In Jones, a rape case, reversal was required because the trial court refused to allow the defendant to testify that the sex was consensual and to cross-examine the victim on consent. The Supreme Court explained that the trial court erred because this evidence constituted the defendant's "entire defense" and was therefore of "extremely high probative value." Jones, 168 Wn.2d at 721.

Here, although evidence of C.W.'s prior threat of self-harm may be a large portion of Healea's defense, it is not "highly probative" because the incident occurred many months before the assault. Unlike Jones, where the excluded testimony concerned the rape itself, evidence of C.W.'s threat of self-harm is remote in time to the assault. Therefore, Jones does not require reversal.

### Instruction on Lawful Defense of Another

Healea argues that the trial court erroneously relieved the State of its burden of proving each element of the crime when it refused to instruct the jury on the affirmative defense of lawful defense of another. We disagree.

5

A defendant is entitled to have the jury instructed on his theory of the case if there is evidence to support that theory. State v. Fisher, 185 Wn.2d 836, 848, 374 P.3d 1185 (2016). A trial court's failure to so instruct the jury is reversible error. Fisher, 185 Wn.2d at 849. In evaluating the defendant's evidence, the trial court must view it in the light most favorable to him. Fisher, 185 Wn.2d at 849. "'The trial court is justified in denying a request for [an affirmative defense] instruction only where no credible evidence appears in the record to support [it].'" Fisher, 185 Wn.2d at 849 (alterations in original) (quoting State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983)). The defendant bears the burden of production. Fisher, 185 Wn.2d at 849. In Washington,

> [t]he use, attempt, or offer to use force upon or toward the person of another is not unlawful . . .
>
> . . . .
>
> (3) Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary.

RCW 9A.16.020. "The law allows defense of another person against a less-than-life-threatening assault, so long as the degree of force the defendant uses is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to that defendant." State v. Marquez, 131 Wn. App. 566, 575, 127 P.3d 786 (2006) (emphasis omitted).

Whether the defendant has produced sufficient evidence to raise an affirmative defense is a matter of law. Fisher, 185 Wn.2d at 849. If the basis for the trial court's refusal to give the requested jury instruction is a lack of evidence

supporting an affirmative defense, this court reviews that refusal de novo.

Fisher, 185 Wn.2d at 849.

Here, Healea proposed a jury instruction on the lawful defense of another. Defense counsel argued that the instruction was necessary because "[C.W.] placed herself in a dangerous position by being potentially under the influence of methamphetamines along the side of a busy highway—such that Mr. Healea's actions could be seen as a form of defense of her." The trial court refused Healea's proposed instruction, explaining that

> in the Court's view [defense of another] requires that there be testimony in the record that the person who was lawfully aiding another had a reasonable belief that that person was to be injured and there's no evidence in the record to support that anyone had a reasonable belief that she was about to be injured and, therefore, needed the exertion of force against her.

Taking the evidence in a light most favorable to Healea, hitchhiking can be a risky activity and Healea could have had a legitimate concern for C.W.'s safety if she entered Aguilar's car. But the degree of force Healea used was more than a reasonably prudent person would use in that situation. Aguilar testified that Healea dragged C.W. down the embankment by her neck and arm, picked her up and dropped her several times, and hit her on the face and chest while she was holding on to a tree. Aguilar also testified that the altercation lasted for 20 minutes and that she and Avalos yelled to Healea and C.W. that the police were on the way. Even considered in the light most favorable to Healea, this evidence does not support a defense-of-another instruction. Healea's decision to continue to restrain and hit C.W. for an extended period of time was not reasonable, especially after hearing that the police were on their way. A reasonable person

in Healea's shoes would not have continued to use such force on C.W. Therefore, there was not sufficient evidence to support an instruction on lawful defense of another.

### *Missing Witness Instruction*

Healea argues that the trial court violated his right to present a defense by refusing a missing witness instruction as to C.W. We disagree.

When a party fails to call a witness it would naturally call if the witness's testimony would be favorable, the "missing witness" doctrine permits the jury to make an inference that the uncalled witness's testimony would have been unfavorable. State v. Blair, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991). But the inference is not permitted when (1) the witness is not peculiarly available to the party failing to call the witness; (2) the witness's testimony is unimportant or cumulative; or (3) the circumstances do not establish, as a matter of reasonable probability, that the party would not knowingly fail to call the witness unless the witness's testimony would be damaging. Blair, 117 Wn.2d at 488-90. In other words, if a witness's absence can be explained, the jury is not permitted to infer that the witness's testimony would have been unfavorable. Blair, 117 Wn.2d at 489.

We review a trial court's refusal to give a requested instruction for abuse of discretion. State v. Picard, 90 Wn. App. 890, 902, 954 P.2d 336 (1998).

Here, the State made a motion in limine to exclude any missing witness argument. The prosecutor told the court that he had been in and out of contact with C.W., who frequently changed her phone number, but that C.W. indicated several months prior to trial that she had moved on with her life and "was

8

effectively not inclined to participate in the matter any further." C.W. then changed her mind and set up a phone interview with the prosecutor and defense counsel, but at the time of the meeting, she did not answer her phone or return any voice mails. Less than a week before trial, C.W. contacted the prosecutor with a new phone number and left a voice mail, asking if she had missed the meeting. C.W. did not answer or return the prosecutor's subsequent calls. Under these circumstances, which demonstrate that C.W. was not peculiarly available to the State, the trial court did not abuse its discretion by refusing to give a missing witness instruction.

Healea argues that C.W. was peculiarly available to the State because the State had the ability to subpoena her for trial, which it did not do. But a witness is not "peculiarly available" merely because the witness is subject to the subpoena power. Blair, 117 Wn.2d at 490. Therefore, this argument fails.

Healea also argues that C.W.'s interests were aligned with the State and she was therefore peculiarly available to the State because Healea was not permitted to contact her due to the criminal charges against him. But

> [f]or a witness to be "available" to one party to an action, there must have been such a community of interest between the party and the witness, or the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging.

State v. Davis, 73 Wn.2d 271, 277, 438 P.2d 185 (1968), overruled on other grounds, State v. Abdulle, 174 Wn.2d 411, 275 P.3d 1113 (2012). The fact that Healea is prohibited from contacting C.W. does not indicate a community of

9

interest between C.W. and the State or the State's superior opportunity for knowledge of C.W. such that C.W. is peculiarly available to the State. Healea's argument is not persuasive.

### Mandatory LFOs

Healea argues that the trial court's imposition of $600 in mandatory LFOs violates the antiattachment provision of the Social Security Act because Social Security disability benefits are his only income. We hold that the antiattachment provision does not prohibit the imposition of LFOs, but remand to the trial court to amend the judgment and sentence to indicate that the LFOs may not be satisfied out of any funds subject to the antiattachment provision.

The Social Security antiattachment statute states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, *or other legal process,* or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (emphasis added). Under this statute, "neither current nor future social security payments are subject to seizure by any process of law." State v. Catling, 2 Wn. App. 2d 819, 823, 413 P.3d 27, review granted, 191 Wn.2d 1001 (2018). The United States Supreme Court has held that "other legal process" requires the "utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385, 123 S. Ct. 1017,

154 L. Ed. 2d 972 (2003). Our Supreme Court has held that a trial court's requirement that a defendant pay $15 per month in discretionary LFOs from her Social Security benefits was prohibited as an "other legal process." City of Richland v. Wakefield, 186 Wn.2d 596, 609, 380 P.3d 459 (2016).

Here, the trial court ordered Healea to pay $600 in mandatory LFOs despite evidence that his only income is from Social Security disability benefits. Healea argues that the imposition of these mandatory LFOs is an "other legal process" that is prohibited under Keffeler and Wakefield.

In State v. Catling, Division III of this court addressed whether the imposition of mandatory LFOs on a defendant whose sole income is from Social Security disability benefits constitutes a violation of the antiattachment statute. Catling, 2 Wn. App. 2d at 822-23. The majority held that "[t]he anti-attachment provision prevents levying against Social Security disability proceeds, but it does not address the debt itself" because "[t]he statute distinguishes between the imposition of LFOs and compelled payment of LFOs from the exempt proceeds of a Social Security payment." Catling, 2 Wn. App. 2d at 826 (emphasis omitted). In so holding, the majority relied on In re Lampart, 306 Mich. App. 226, 856 N.W.2d 192 (2014), where the Michigan Court of Appeals held that enforcement of a restitution order against Social Security income benefits violated the antiattachment clause, but that the restitution order remained valid. Lampart, 306 Mich. App. at 245-46. The Michigan court reasoned:

> If it were determined that Alexandroni's only asset, or source of income, is and remains from SSDI benefits, 42 USC 407(a) prohibits the use of legal process—including by a finding of contempt—from reaching those benefits to satisfy the restitution

order. If, however, Alexandroni is found to have income aside from her SSDI benefits, or other assets that are derived from other sources, that income or those assets could be used to satisfy the restitution award. The restitution order itself remains valid. Indeed, Alexandroni's receipt of SSDI benefits does not immunize her from the restitution order; rather, it merely prohibits the trial court from using legal process to compel satisfaction of the restitution order from those benefits. Because it is possible that Alexandroni may have assets or may receive income from other sources in the future, we affirm the trial court's refusal to cancel or modify Alexandroni's restitution obligation.

Lampart, 306 Mich. App. at 245-46 (citation omitted). The Catling majority concluded that the imposition of the mandatory LFOs was valid, but that remand was necessary so the trial court could "amend its judgment and sentence to indicate that the LFOs may not be satisfied out of any funds subject to 42 U.S.C. § 407(a)." Catling, 2 Wn. App. 2d at 826. This reasoning is persuasive, and we adopt the same remedy.

Therefore, we affirm Healea's conviction and the imposition of mandatory LFOs, but remand so that the trial court can amend the judgment and sentence to specify that the LFOs may not be satisfied out of any funds subject to the antiattachment statute.

WE CONCUR:

12