# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MONICA ONETTE ROBERTSON,

        Defendant-Appellant.

UNPUBLISHED
November 12, 2015

No. 322882
Kent Circuit Court
LC No. 12-010112-FH

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

Defendant was convicted of two counts of attempted welfare fraud, failure to inform, in an amount of $500 or more, MCL 400.60(2). The trial court sentenced defendant to six months in jail and five years' probation. It also ordered defendant to pay $371,033.47 in restitution. Defendant appeals by delayed leave granted the June 14, 2014 restitution order. We affirm.

Defendant argues that the trial court erred in ordering her to pay restitution in the amount of $363,409.66 for billing the Department of Human Services (DHS) [1] for daycare that she did not provide. Defendant also argues that the trial court erred in ordering her to pay restitution in the amount of $7,623.81 for underrepresenting her self-employment income on applications for Medicaid benefits.

An order of restitution is subject to the following standard of review:

> Whether and to what extent a loss must be compensated is a matter of statutory interpretation; and this Court reviews de novo the proper interpretation of statutes. However, this Court reviews the findings underlying a trial court's restitution order for clear error. A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made. [*People v*

---

[1] We recognize that DHS has been merged with the Department of Community Health to create the Department of Health and Human Services (DHHS) but we refer to DHS in this opinion because that was the department that was in existence during the course of the proceedings.

-1-

*Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2011) (internal citations omitted).]

Crime victims have a constitutional right to restitution that is governed by statute. See *People v Garrison*, 495 Mich 362, 367; 852 NW2d 45 (2014); *Allen*, 295 Mich App at 281-282. MCL 769.1a, part of the Code of Criminal Procedure, provides in pertinent part:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a felony, misdemeanor, or ordinance violation, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.

Similarly, MCL 780.766(2), in the Crime Victim's Rights Act, MCL 780.751 *et seq.*, provides:

> Except as provided in subsection (8), when sentencing a defendant of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. . . .

The goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). Statutory language that is clear and unambiguous must be enforced as written, *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011), because it is presumed that the Legislature intended the statute's plain meaning, *Peltola*, 489 Mich at 181. Nothing may be read into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *People v Breidenbach*, 489 Mich 1, 10; 798 NW2d 738 (2011). Under the plain language of the two restitution statutes, a trial court is required to order full restitution, i.e., restitution that is maximal and complete, for the loss caused by the defendant's criminal conduct. *Garrison*, 495 Mich at 373; *Allen*, 295 Mich App at 281, n 1. In ordering restitution, a "defendant's ability to pay is irrelevant; only the victim's actual losses from the criminal conduct are to be considered." *In re Lampart*, 306 Mich App 226, 233; 856 NW2d 192 (2014).

When there is a dispute as to the amount of restitution, the prosecutor bears the burden of establishing the proper amount by a preponderance of the evidence. MCL 780.767(4); *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012). A preponderance of the evidence is that which when weighed with the evidence that opposes it has "more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

In arguing that the trial court erred in ordering restitution, defendant relies on the rule, which is recited in several cases from this Court, that restitution should only encompass those losses which are easily ascertained and measured, and which are a direct result of the defendant's criminal acts. See, e.g., *People v Byard*, 265 Mich App 510, 513; 696 NW2d 783 (2005); *People v Tyler*, 188 Mich App 83, 89; 468 NW2d 537 (1991). This rule comes from *People v Heil*, 79 Mich App 739, 748-749; 262 NW2d 895 (1977), a case that was decided before the adoption of

Const 1963, art 1, § 24, and the current statutory scheme requiring "full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." MCL 769.1a(2); MCL 780.766(2); *Garrison*, 495 Mich at 367-368, 372-373. Thus, the rule on which defendant relies does not originate from the plain language of the current restitution statutes and, because we must enforce the plain language of those statutes, we decline to base our analysis of the trial court's restitution order on the *Heil* rule.

We conclude that the trial court did not clearly err in finding that $363,409.66 was the amount of loss suffered by DHS for defendant's criminal conduct of billing DHS for daycare that she did not provide. MCR 2.613(C); *Allen*, 295 Mich App at 281. The trial court relied on the testimony of Lori Hernandez, a senior agent with the Office of the Inspector General for DHS, who based her estimate of the amount defendant overcharged for daycare on the sign in and sign out sheets that defendant provided of children attending her center. Hernandez testified that the sign in and sign out sheets were the most reliable records of daycare services provided because DHS required defendant to keep them and because the sheets had to be signed by defendant and the child's parent. Based on Hernandez's testimony, as well as the testimony of defendant's witness, Robert Schellenberg, a certified public accountant, that the other records defendant kept were so disorganized that they only created chaos, we are not left with a definite and firm conviction that the trial court made a mistake in choosing to credit Hernandez's computation of the amount defendant collected from DHS for daycare that she did not provide. Hernandez's testimony established that defendant failed to keep sign in and sign out sheets that complied with the requirements of DHS, i.e., that both defendant and the child's parent sign stating the arrival and departure time of the child. Hernandez also testified that when she requested records from defendant she only received the sign in and sign out sheets. Defendant did not give Hernandez any records from which Hernandez could attempt to ascertain when a child who was signed in for a particular day but never signed out actually left defendant's care. Under these circumstances, we are not left with a definite and firm conviction that the trial court made a mistake in deeming, as did Hernandez, that defendant overbilled DHS for an entire day when a child was never signed out. *Id.* We affirm the trial court's finding regarding the amount of loss suffered by DHS as a result of defendant's conduct of billing DHS for care not provided was $363,409.66. The prosecution established this amount by a preponderance of evidence.

We also find no clear error in the trial court's determination of the amount of restitution for defendant's conduct of underrepresenting her income on the applications for Medicaid benefits. Findings of fact are sufficient as long as it appears that the trial court was aware of the issues and correctly applied the law. *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). The trial court relied heavily on the testimony of Hernandez regarding her calculations as to both restitution amounts. The report of Hernandez documenting her calculations was also admitted in evidence at the restitution hearing. Schellenberg disputed Hernandez's calculations regarding the Medicaid overpayment on the basis of his assertion that the percentage deducted from gross income for expenses was too low. Although he did not prepare them, did not examine all of defendant's records, and acknowledged that what records defendant had kept were so disorganized that they only created chaos, Schellenberg opined that defendant's tax returns were accurate and showed that defendant's income was much less than Hernandez calculated.

Although the trial court's discussion on the record regarding the Medicaid restitution was minimal, it is clear that the court found Hernandez credible, and also found the method she used

in making her calculations was both fair and reasonable. Thus, at least implicitly, trial court found that Hernandez' method of calculating the Medicaid overpayment was more credible and deserved more weight than Schellenberg's testimony or defendant's tax returns. Defendant essentially questions the weight of the evidence and witness credibility. But this Court will not interfere with the factfinder's role of determining the weight of the evidence or the credibility of witnesses. *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). Consequently, we are not left with the definite and firm conviction that the trial court made a mistake in finding that the overpayment of Medicaid benefits was $7,623.81. *Allen*, 295 Mich App at 281.

We affirm.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Mark T. Boonstra

-4-