DA 16-0623

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 69

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JASON MATTHEW PARKHILL,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DC 13-955, DC 15-559, and DC 16-20
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Matthew J. Wald, Wald Law Office, PLLC, Hardin, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

        Scott Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: February 7, 2018

Decided: April 3, 2018

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court, Yellowstone County, sentenced Jason Parkhill in three separate cases involving Partner or Family Member Assault (PFMA) against three different women. The District Court included conditions in all three cases that restricted contact between Parkhill and his victims. Parkhill appeals the restriction prohibiting contact between him and his second victim, K.M., as an unreasonable sentencing condition and as an unconstitutional restriction on his common-law marriage. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This appeal arises from four separate criminal cases filed against Parkhill between 2013 and 2016. Parkhill was charged in 2013 with felony PFMA in violation of § 45-5-206(1)(a), MCA, for an assault against J.P., with whom he had an intimate relationship. He pleaded guilty to the charge. The District Court sentenced him to two years, with all but thirty days deferred.

¶3 During the time of Parkhill's deferred sentence for the 2013 conviction, he was charged with two additional counts of felony PFMA—one in 2014 and one in 2015—both involving his domestic partner K.M. The State later amended both cases to add felony charges of tampering with a witness because of Parkhill's attempts to dissuade K.M. from cooperating with law enforcement. The State also petitioned to revoke the deferred sentence for his 2013 conviction. In November 2015, Parkhill entered into a plea agreement with the State to admit to violating the conditions of his deferred sentence for his 2013 PFMA conviction and to plead guilty to the 2015 PFMA and related witness

2

tampering charges. The State agreed to dismiss the 2014 PFMA and related witness tampering charges.

¶4 Prior to sentencing for the 2013 and 2015 convictions, however, Parkhill was charged with another count of PFMA and a count of misdemeanor criminal destruction of or tampering with a communication device for an assault against his new girlfriend J.G. in early 2016. The 2016 charges later were amended to include felony tampering with a witness after Parkhill contacted J.G. on multiple occasions using another inmate's video chat account and discouraged her from cooperating with law enforcement. Parkhill entered another plea agreement with the State, agreeing to plead no contest to felony tampering with a witness. In exchange, the State agreed to dismiss the related PFMA and tampering with a communication device charges. At a combined hearing, Parkhill entered a no contest plea for the 2016 witness tampering charge, and the District Court revoked Parkhill's 2013 deferred sentence. The court proceeded to sentence Parkhill for the 2013, 2015, and 2016 convictions.

¶5 The pre-sentence investigation report (PSI) included victim statement letters from K.M., K.M.'s son, and K.M.'s mother. K.M.'s son described abusive interactions between his mother and Parkhill and said he was scared that Parkhill would "get revenge" on him and his mother. K.M.'s mother wrote that K.M. and K.M.'s son were terrified of Parkhill. K.M.'s mother reported that Parkhill had sent her threatening text messages and expressed her belief that "Parkhill is a very sick and dangerous individual." K.M. submitted a fifteen-page, hand-written letter in which she described in graphic detail Parkhill's physical, psychological, and sexual abuse of her. She stated that she could not "sit in a

court room with this man because [she is] terrified of him" and "fear[s] for [her] son's life as well as [her own.]"

¶6     The PSI recommended two probation conditions to restrict contact between Parkhill and his victims. The first states:

> The Defendant shall not knowingly have any contact, oral, written, electronic or through a third party, with the victim(s) unless such contact is voluntarily initiated by the victim(s) through the Department of Corrections. DOC staff may notify victims about the availability of opportunities for facilitated contact with their offenders without being considered "third parties."

The second restriction states:

> The Defendant shall not have any contact with the victim(s) unless approved by the Probation & Parole Officer and his/her counselor.

Parkhill objected at the sentencing hearing to the inclusion of these probation conditions insofar as they pertained to K.M.

¶7     At the sentencing hearing, Parkhill's counsel presented another letter from K.M. in which she requested contact with Parkhill so that they could work on their relationship and pursue couple's counseling together. In objecting to the two conditions, Parkhill's counsel stated, "with regard to the 2013 and 2016 cases, Judge, J.P. and J.G., we would have no objection to no contact with either of them. However, as far as [the proposed no-contact restrictions] go, we would like the Court to lift the no contact with K.M. and put in a 'no unreasonable contact' restriction." The District Court denied the objection, stating "there needs to be protection. Even if [K.M.] wants contact, we need to try to protect her from herself." Noting prior domestic violence and assault convictions from Washington state, the District Court explained that it was making its sentencing decision "in light of this

4

abominable history of violence and domestic violence, whether there were broken bones or whether there was fear, they are convictions, and they are repeat convictions, and there is tampering consistently throughout this time frame."

¶8 The District Court sentenced Parkhill for the three cases to a combined twenty years, with eight suspended.

## STANDARDS OF REVIEW

¶9 We first review sentencing conditions for legality to determine whether the conditions fall within statutory parameters. *State v. Ashby*, 2008 MT 83, ¶¶ 8-9, 342 Mont. 187, 179 P.3d 1164. We then review the reasonableness of the conditions imposed under §§ 46-18-201(4) and -202(1), MCA, for an abuse of discretion. *Ashby*, ¶ 9.

## DISCUSSION

¶10 Parkhill argues on appeal that the two conditions restricting his contact with K.M. are illegal sentencing conditions. First, he contends that in *State v. Guill*, 2011 MT 32, 359 Mont. 225, 248 P.3d 826, this Court allowed a restricted contact condition between married persons because the district court was presented with expert testimony that such restrictions would help rehabilitate the defendant. In the present case, the District Court made no findings and was presented with no specific evidence that these conditions would serve the rehabilitation of the defendant. Further, Parkhill contends that the restricted contact conditions imposed on him are overly broad, because less restrictive conditions—such as the conditions to remain law-abiding, to obtain violence and anger assessments and treatment, and to complete parenting classes—would sufficiently aid in his rehabilitation and protect K.M. and society. Finally, Parkhill argues that the restrictions impermissibly

5

infringed on his fundamental marriage, privacy, and due process rights, because the sentencing conditions were not narrowly tailored to meet a compelling government interest in this case.

¶11    The State replies that the conditions are reasonable because there is a nexus between the conditions imposed and Parkhill's offenses.  It argues that the District Court was not required to make a specific finding that the conditions served Parkhill's rehabilitation.  Further, the State argues that the conditions are not overly broad, because they do not prohibit all contact between the parties; they simply limit it.  Finally, the State argues that Parkhill did not preserve his constitutional objection for appeal, because his objection at the hearing did not raise the constitutional issue.

¶12    A sentencing judge is authorized to impose various restrictions or conditions on a sentence that the judge considers "necessary for rehabilitation or for the protection of the victim or society."  Section 46-18-201(4)(p), MCA; *see also* § 46-18-202(1)(g), MCA (allowing the sentencing judge to impose "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society.").  If the conditions the district court imposed fall within statutory parameters, we will uphold a condition of probation "so long as the condition has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ashby*, ¶ 15.  We will reverse a sentencing condition if it is "overly broad or unduly punitive, or if the required nexus is absent or exceedingly tenuous." *State v. Bullplume*, 2013 MT 169, ¶ 18, 370 Mont. 453, 305 P.3d 753 (internal quotations and citations omitted).

6

¶13 Parkhill's reliance on *State v. Guill* and his contention that the District Court failed to establish that the condition is related to Parkhill's rehabilitation are misplaced. In *Guill*, the district court imposed a restricted contact provision between spouses who were co-defendants. K.M. is not Parkhill's co-defendant. She is the victim of his crime. *See* § 46-24-106(5), MCA. Under §§ 26-18-201(4)(p) and -202(1)(g), MCA, the District Court is authorized to impose conditions for K.M.'s protection. The District Court acknowledged this when it addressed Parkhill's objection to the contact restrictions, emphasizing the need for protection of Parkhill's victims, including K.M.

¶14 Parkhill's argument that the restricted contact conditions are overly broad also fails. The District Court did not prohibit all contact; it simply put limitations on contact for the protection of K.M. Neither did the District Court limit Parkhill's ability to petition to remove or modify the conditions, upon the recommendation of his probation officer, at a later date under § 46-23-1011(5)(a), MCA. The District Court could have considered less restrictive conditions to protect K.M., as Parkhill argues, but under our deferential standard of sentencing conditions, Parkhill has not established that the contact restrictions are an abuse of the District Court's broad discretion in light of the evidence before it.

¶15 Finally, Parkhill contends on appeal that his general objection to the two conditions was sufficient to preserve his argument that the conditions unconstitutionally infringe upon his marriage, privacy, and due process rights. However, "an argument which merely implies a constitutional violation does not sufficiently alert the court of the issue and consequently does not reserve the issue for appeal." *State v. LaFreniere*, 2008 MT 99, ¶ 14, 342 Mont. 309, 180 P.3d 1161.

¶16 Under *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), this Court will "review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing." This is a narrow exception to the general rule of waiver, however. Under the *Lenihan* exception, a claim that a statute authorizing a sentence is unconstitutional on its face may be raised for the first time on appeal, but the exception does not apply to as-applied constitutional challenges. *See State v. Robertson*, 2015 MT 266, ¶ 12, 381 Mont. 75, 364 P.3d 580. Parkhill does not challenge the constitutionality of §§ 46-18-201(4) and -202(1), MCA, generally, but rather the statutes as applied to him. His as-applied constitutional argument was not preserved for appeal and we will not consider it.

## CONCLUSION

¶17 We affirm the judgments entered by the District Court.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR