FILED

12/29/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0120

DA 19-0120

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2020 MT 327

STATE OF MONTANA,

Plaintiff and Appellee,

v.

DOUGLAS EUGENE INGRAM,

Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 18-114
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel V. Biddulph, Ferguson Law Office, PLLC, Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

Marcia Jean Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:   September 23, 2020

Decided:   December 29, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Douglas Ingram appeals the criminal sentence, challenging financial assessments imposed by the Montana Nineteenth Judicial District Court, Lincoln County. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶2 Ingram presents four issues, restated as follows:

1. *Whether the District Court erred by assessing the statutory minimum fine of $5,000 pursuant to § 61-8-731(1)(a)(iii), MCA?*

2. *Whether the District Court erred by assessing the cost of imprisonment, probation, and alcohol treatment pursuant to § 61-8-731(4)(b), MCA?*

3. *Whether the District Court erred by assessing the $100 fine pursuant to § 46-18-232(1), MCA?*

4. *Whether the District Court erred by assessing the $500 surcharge in compliance with § 46-18-236(1)(b), MCA?*

¶3 We affirm issues one, two, and three. We reverse and remand on issue four.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 On September 2, 2018, Montana Highway Patrol responded to reports of a single car accident on Montana Highway 37. Ingram had been driving his Chevrolet pickup truck, pulling a Prowler Lynx camper trailer, and was headed to a camping facility in Spokane. He was with the vehicle when the patrolman arrived and exhibited symptoms of intoxication. Ingram registered a 0.273 breath alcohol content on a preliminary breath test, and a 0.220 result from an Intoxilyzer test conducted later at the Eureka Law Enforcement Center. Ingram was charged with DUI, Fourth or Subsequent Offense, a felony, in violation of § 61-8-731, MCA, and entered a guilty plea in November 2018.

¶5     A Pre-Sentence Investigation (PSI) report indicated Ingram was unemployed with no assets, had approximately $7,000 in medical debt, and that his sole source of income was $857 per month in Social Security Disability Insurance (SSDI) payments.  It did not reference Ingram's pickup and camper trailer involved in the accident.  Ingram was 61 years old, had obtained his GED, and was honorably discharged from the Navy.  Ingram filed a sentencing memorandum citing 42 U.S.C. § 407(a), which provides that no social security benefits "shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law," and arguing, based upon this Court's decision in *State v. Eaton*, 2004 MT 283, 323 Mont. 287, 99 P.3d 661, that his Social Security benefits could not be used as income to satisfy sentencing obligations.  Ingram acknowledged that the ability-to-pay inquiry under § 46-18-231, MCA, did not apply to the fine imposed under § 61-8-731, MCA,[1] because it was mandatory, citing *State v. Mingus*, 2004 MT 24, ¶ 15, 319 Mont. 349, 84 P.3d 658.  He did not raise a challenge to this precedent or any constitutional issue in his memorandum or at the sentencing hearing.

¶6     The District Court imposed the statutory minimum fine of $5,000 for felony DUI under § 61-8-731, MCA, reasoning it was mandatory under *Mingus*, and distinguishing the use of Social Security benefits as income for restitution purposes that had been reversed in *Eaton*.  Ingram was required to "seek and obtain employment," and to "obtain permission

---

[1] Section 61-8-731(1)(a)(iii), MCA, provides that a fourth offense DUI "shall be punished by . . . a fine in an amount of not less than $5,000 or more than $10,000."

from his supervising officer before engaging in a business, purchasing real property, purchasing an automobile, or incurring a debt." The District Court sentenced Ingram to a 13-month commitment to the Department of Corrections for placement in a treatment program, followed by a three-year suspended sentence, subject to terms and conditions that were recommended in the PSI, which reads in pertinent part:

13. [Ingram] shall pay the following fees and/or charges : . . .

   b. Surcharge of the greater of $20 or 10% of the fine for each felony offense . . . TOTAL $500.00 . . .

   f. [A] fine(s) over and above any amount credited for pre-conviction incarceration as ordered and directed by the Court. . . . TOTAL $5,000.00 . . .

   g. [C]osts of legal fees and expenses defined in § 25-10-201, MCA . . . or $100 per felony case[,] whichever is greater (§ 46-18-232, MCA) . . . TOTAL $100.00 . . .

17. [Ingram] shall obtain a chemical dependency evaluation by a state-approved evaluator. [Ingram] shall pay for the evaluation and follow all of the evaluator's treatment recommendations. . . .

27. [Ingram,] if financially able, as a condition of probation, shall pay for the cost of imprisonment, probation, and alcohol treatment for the length of time he is imprisoned, on probation, or in alcohol treatment. (§ 61-8-731, MCA) . . .

29. [Ingram] shall enter and remain in an aftercare treatment program for the entirety of the probationary period. [Ingram] shall pay for the cost of out-patient alcohol treatment during the term of probation. (§ 61-8-731, MCA)[.]

¶7 During the hearing, Ingram requested the District Court suspend the $5,000 fine and strike recommended Conditions 13(b) and 27. Ingram did not object to Condition 17, but did ask that the District Court strike Condition 29, reasoning it was the same as Condition 17. Ingram raised no other objections at the hearing. The District Court denied

4

Ingram's requests to alter the conditions, but credited him with 106 days for time served prior to the judgment. Ingram appeals, challenging the denial of his sentencing objections.

## STANDARD OF REVIEW

¶8 The Court reviews fines the same as sentencing conditions. *State v. Reynolds*, 2017 MT 317, ¶ 15, 390 Mont. 58, 408 P.3d 503. We review sentencing conditions first for legality, then for abuse of discretion as to the condition's reasonableness under the facts of the case. *State v. Daricek*, 2018 MT 31, ¶ 7, 390 Mont. 273, 412 P.3d 1044 (citation omitted). Whether a sentence is legal is a question of law subject to de novo review. *Daricek*, ¶ 7. Our review of legality is generally confined to determining: whether the sentence falls within the statutory parameters, whether the district court had statutory authority to impose the sentence, and whether the district court followed the affirmative mandates of the applicable sentencing statutes. *State v. Himes*, 2015 MT 91, ¶ 22, 378 Mont. 419, 345 P.3d 297.

## DISCUSSION

*Condition 13(f): Statutory Minimum Fine for the Offense*

¶9 Ingram first argues the District Court erred by failing to consider his ability to pay when imposing the $5,000 fine for felony DUI under § 61-8-731(1)(a)(iii), MCA. Ingram acknowledges the fine is statutorily mandated and was exempted from an ability-to-pay inquiry in *Mingus*, ¶ 15 (a district court has "no discretion as to whether to impose the fine, irrespective of the defendant's ability to pay"); *see also Reynolds*, ¶ 19 (felony DUI and misdemeanor traffic violations are subject to minimum fines that are "not subject to the discretionary authority provided to district courts under general sentencing statutes").

5

Ingram thus asks that we overturn *Mingus*. Further, Ingram states that, while he "is not presenting a facial challenge [to] the constitutionality of the mandatory minimum fine set forth in MCA § 61-8-731," he is challenging the statute as applied to him, arguing that his request for suspension of the fine by the District Court "naturally implicate[d] Article II § 22 of the Montana Constitution," and based upon the "implicit" recognition within our decision in *State v. Yang*, 2019 MT 266, 397 Mont. 486, 452 P.3d 897, an ability-to-pay analysis is required in "all cases."

¶10    Upon review of the trial record, we must conclude that Ingram's arguments cannot be sustained. Ingram cited *Mingus* in the District Court, and did not oppose application of the case or seek its reversal as "manifestly wrong," *Formicove, Inc. v. Burlington N.*, 207 Mont. 189, 194-95, 673 P.2d 469, 472 (1983), even when the District Court stated its reliance on it. And, adopting his position would require overturning more cases than just *Mingus*, a reality his arguments do not address. His request that the statutory DUI fine be suspended neither constituted nor preserved an as-applied constitutional challenge to the statute, which he presses here. *See State v. Parkhill*, 2018 MT 69, ¶¶ 15-16, 391 Mont. 114, 414 P.3d 1244 (defendant's general objections to sentencing conditions did not preserve an as-applied constitutional challenge to the subject statutes); *State v. Coleman*, 2018 MT 290, ¶ 9, 393 Mont. 375, 431 P.3d 26 ("we will not address as-applied constitutional challenges to sentencing conditions raised for the first time on appeal"). Even so, *Yang* contrasted statutorily-mandated fines within its reasoning, a factor that would necessitate further consideration within the constitutional challenge proffered here. *Yang*, ¶ 23 ("Unlike other mandatory fines which are 'provided by [the] law for the

6

offense,' § 46-18-201(3)(a), MCA, such as the minimum fine of $5,000 and the maximum fine of $10,000 for driving under the influence of alcohol or drugs, § 61-8-731(1)(a)(iii), (b)(ii), MCA, there is no limit on the [subject market value fine.]"). We thus conclude that the appellant's burden to demonstrate § 61-8-731(1)(a)(iii), MCA, is unconstitutional upon a properly preserved challenge, or that *Mingus* and other precedent should be overturned as "manifestly wrong," has not been satisfied here.

¶11 Ingram also argues his "Sentence and Judgment is judicial authorization over his SSDI to pay fines, fees and costs as mandated by the court's sentencing order," contrary to our holding in *Eaton*. *Eaton* was concerned with the anti-attachment provision of the Social Security Act, which provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). This statute provides that Social Security benefits cannot be attached or otherwise subjected to legal process. However, nothing in the wording of the statute purports to prohibit the imposition of new debt or fines. In *Eaton*, the District Court imposed restitution and explicitly ordered that Eaton pay 20% of his social security income toward the restitution obligation. *Eaton*, ¶ 24. We concluded this sentencing requirement was "an improper attempt to subject Eaton's social security benefits to 'other legal process,'" which was prohibited by the Social Security Act. *Eaton*, ¶ 26. However, Ingram's sentence does not make the same error. The District Court simply imposed the mandatory fine, referenced no source income or assets, and did not attempt to capture,

7

directly or indirectly, Ingram's SSDI benefit and thereby violate the Social Security Act. To the contrary, Ingram was required to obtain employment, and he does not challenge either this condition or his employability. Thus, in these circumstances, the sentence does not constitute a "judicial authorization over his SSDI" benefits, as Ingram argues. Further, as the Supreme Court of Washington has explained, while the anti-assignment provision of the Social Security Act "requires that Social Security moneys cannot be reached to *satisfy* a debt[,] . . . [i]t does not forgive a debt, it does not address the use of other assets to retire a debt, and *it does not prohibit a debt*; it only prohibits any use of Social Security moneys for debt retirement." *State v. Catling*, 193 Wash. 2d 252, 260, 438 P.3d 1174, 1178 (2019) (emphasis added).[2] Ingram's receipt of SSDI does not immunize him from a mandatory fine. Rather, it merely prohibits the capture of those benefits to satisfy the fine.[3]

¶12 This distinction was recognized in a similar Michigan case applying the federal statute, based upon the U.S. Supreme Court's decision in *Keffeler*, to a restitution requirement imposed as required under the Michigan state constitution. *State v. Lampart (In re Lampart)*, 306 Mich. App. 226, 856 N.W.2d 192 (2014). The Michigan Court of

---

[2] We look to other jurisdictions when interpreting federal statutes or issues of first impression. *State v. Bullock*, 272 Mont. 361, 378, 901 P.2d 61, 72 (1995).

[3] Ingram also cites *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1025 (2003), which was cited in *Eaton*, to support his argument that a mandatory fine cannot be imposed upon a defendant whose income is composed of SSDI benefits. However, *Keffeler* stands for the uncontested propositions that a mandatory fine constitutes a "judicial or quasi-judicial mechanism" that comes within "legal process," and that Social Security benefits cannot be used to *satisfy* such a debt. It does not address imposition of debt. *Keffeler*, 537 U.S. at 385, 123 S. Ct. at 1025.

8

Appeals cited our decision in *Eaton* but distinguished between satisfaction of the obligation from SSDI benefits, as opposed to satisfaction from other income or assets:

> [I]t appears undisputed that Alexandroni's only source of income, at least as of the April 27, 2011 trial court order, was her SSDI benefits. The trial court clearly was aware of this, and nonetheless decided to consider her SSDI benefits as income for purposes of fashioning a restitution order subject to contempt. While we find no error merely in the trial court's consideration of Alexandroni's SSDI benefits as income, because 42 USC 407(a) does not directly proscribe such consideration, we hold that, to the extent the trial court's consideration of those benefits results in an order of restitution *that could only be satisfied* from those benefits, the use of the court's contempt powers then would violate 42 USC 407(a). . . . On remand, the trial court should be careful to avoid any order *that in fact would compel Alexandroni to satisfy her restitution obligation from the proceeds of her SSDI benefits.* That said, the current record does not reflect whether Alexandroni possesses any assets, other than as generated by her SSDI benefit income, from which her restitution might be satisfied. *Nor does the record reflect whether Alexandroni's income remains solely her SSDI benefits, as her income and income sources conceivably could change over time.* Those are matters that the trial court should explore on remand.

*In re Lampart*, 306 Mich. App. at 240-41, 856 N.W.2d at 200 (emphasis added). We likewise recognize that Ingram's "income sources conceivably could change over time[,]" a prospect recognized by the unchallenged probation condition that he obtain employment. *In re Lampart*, 306 Mich. App. at 241, 856 N.W.2d at 200. Consistent therewith, the District Court is afforded discretion pursuant to §§ 46-18-232, -234, MCA, to ultimately delay or remit costs imposed, in addition to denying any effort by the State to collect payment for the fine from Social Security benefits. We therefore affirm the imposition of the mandatory fine.

*Condition 27: Cost of Imprisonment, Probation, and Alcohol Treatment*

9

¶13 Regarding Condition 27, Ingram argues the District Court erred by failing to consider his finances and ability to pay with regard to assessing him with the cost of imprisonment, probation, and alcohol treatment, pursuant to § 61-8-731(4)(b), MCA. The statute provides that the sentencing court "shall, as a condition of probation, order" the costs of "imprisonment, probation, and alcohol treatment" to be paid by the defendant if "financially able[.]" Section 61-8-731(4)(b), MCA. Condition 27 employs identical qualifying language, passing the costs onto Ingram only if he is "financially able."

¶14 In *Daricek*, the defendant challenged a condition identical to Condition 27. *Daricek*, ¶ 3. We held the inclusion of the phrase "if financially able" in the statute was a determination directed to the Department of Corrections, reasoning the sentencing court was "not likely to know the amount of the costs of future imprisonment, probation, or alcohol treatment at the time of sentencing," since costs fluctuate according to the defendant's responsiveness and the prescribed treatment. *Daricek*, ¶ 11. Rather, it is the Department that is "charged with supervising probationers 'in accord with the conditions set by a sentencing judge[;]'" directed to expense the "'rates and charges to [probationers] in any community correction program[;]'" and granted the "authority to determine, after sentencing, the costs of 'imprisonment, probation, and alcohol treatment' that a sentencing court has imposed under § 61-8-731(4)(b), MCA." *Daricek*, ¶ 12 (quoting §§ 46-23-1011(1), 53-1-501(2), 61-8-731(4)(b), MCA).

¶15 Therefore, it is the Department of Corrections, not the sentencing court, which assesses the defendant's ability to underwrite the costs associated with his or her sentence. Ingram correctly states that social security benefits cannot be applied to the costs. *Eaton*,

10

¶ 22. Since the Department of Corrections is statutorily compelled to factor the financial resources of the defendant when assessing imprisonment, probation, and treatment costs, no defendant will be obligated to pay costs unless financially able. *See* §§ 53-1-501(2), -502(2), MCA. We conclude the District Court properly deferred to the Department of Corrections for assessing Ingram's ability to pay and that imposition of Condition 27 complied with the plain language of § 61-8-731(4)(b), MCA.

*Condition 13(g): $100 Fine in lieu of Costs of Legal Fees and Expenses*

¶16 Ingram next argues that imposition of the $100 fine under Condition 13(g) is illegal because the District Court failed to appraise his financial resources. Pursuant to § 46-18-232(1), MCA, a sentencing court may require a felony offender to pay the greater of statutory legal fees and expenses or a $100 fine. The statute requires that the sentencing court inquire into whether the defendant is or will be able to pay the fine. Section 46-18-232(2), MCA; *State v. McLeod*, 2002 MT 348, ¶ 29, 313 Mont. 358, 61 P.3d 126 (explaining § 46-18-231(3), MCA (1997), a provision analogous to § 46-18-232(2), MCA).

¶17 However, this Court "will not review issues where the defendant failed to make a contemporaneous objection to the alleged error at the trial court[.]" *State v. Hammer*, 2013 MT 203, ¶ 28, 371 Mont. 121, 305 P.3d 843 (citation omitted). Although Ingram invokes *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), where we permitted appellate review of sentences not properly objected to at the trial level "if it is alleged that such sentence is illegal or exceeds statutory mandates," we have since clarified that a district court's failure to abide by a statutory requirement raises an "objectionable sentence,

not necessarily an illegal one that would invoke the *Lenihan* exception." *State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, 151 P.3d 892 (citing *State v. Nelson*, 274 Mont. 11, 20, 906 P.2d 663, 668 (1995); *State v. Swoboda*, 276 Mont. 479, 482, 918 P.2d 296, 298 (1996)). Because the fine at issue in *Kotwicki* was still within the prescribed statutory parameters, we reasoned that failure to apply all statutory considerations rendered the sentence objectionable rather than illegal, and we affirmed the district court's imposition of the fine. *Kotwicki*, ¶¶ 13-16.

¶18 Here, the fine was within the allowable statutory parameters and the District Court acted with proper authority in assessing the fine. The District Court's failure to make specific findings regarding Ingram's ability to pay the fine rendered the condition objectionable, not illegal. The issue cannot be raised for the first time on appeal, and we do not consider it at this time.[4]

*Condition 13(b): $500 Surcharge*

¶19 Lastly, Ingram argues the District Court erred by imposing the $500 surcharge, Condition 13(b), pursuant to § 46-18-236(1)(b), MCA, without considering his limited income. The sentencing court is required to impose "the greater of $20 or 10% of the fine levied for each felony charge[.]" Section 46-18-236(1)(b), MCA. However, the court must consider the financial resources of the defendant and "[i]f a [sentencing] court determines under [§§] 46-18-231, []-232[, MCA,] that a person is not able to pay the fine and costs or

---

[4] While we do not consider the permissibility of the fine for the first time on appeal, we note that the fine may not be satisfied through the invasion of Social Security benefits. *Eaton*, ¶ 22.

that the person is unable to pay within a reasonable time, the court shall waive payment of the charge imposed by this section." Section 46-18-236(2), MCA.

¶20    While the District Court properly calculated the $500 surcharge as 10 percent of the $5,000 minimum fine imposed, it did so without considering Ingram's ability to pay as required by § 46-18-236(2), MCA. This error was properly objected to during the sentencing hearing and the issue has been conceded by the State. Thus, imposition of the $500 surcharge is reversed and remanded with instruction to conduct such further proceedings as are necessary pursuant to § 46-18-236(2), MCA, to determine Ingram's ability to pay the $500 surcharge.

¶21    Affirmed in part, and reversed in part, and remanded for further proceedings.


/S/ JIM RICE


We concur:


/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR


Justice Laurie McKinnon, dissenting.

¶22    I agree with the Court that it is problematic when, on appeal, Ingram requests this Court overrule *Mingus*, which he acknowledged in the District Court was both binding and troublesome precedent for his position, but nonetheless failed to argue that it be overruled. Of course, it is also true that Ingram did not advance a clearly articulated constitutional challenge in District Court. However, at its core, Ingram's argument before the District

13

Court and this Court is very simple: he is indigent and has no ability to pay a mandatory fine, fees, and costs of the proceedings. An inability to pay challenge is rooted in both the federal and Montana constitutional prohibitions against excessive fines and fees. Here, Ingram's only income was a Social Security Disability Income (SSDI) payment of $857 per month. Ingram asked the District Court to consider his inability to pay and the District Court responded it would not because the fine was mandated both by statute and *Mingus*. Thus, while Ingram unfortunately did not embellish his inability to pay argument with constitutional references nor argue to overrule precedent, the record is clear with respect to some important issues: Ingram was indigent (he was represented by a public defender); Ingram's only source of income was a SSDI payment of $857 per month; he already owed $7,000 in medical debt; the District Court refused to consider his ability to pay, citing *Mingus*; the District Court imposed the mandatory fine provision despite a contrary statute requiring an ability to pay be considered (§ 46-18-231(3), MCA)

¶23    [1]; and the District Court clearly set forth the particular obstacles substantiating its unwillingness to consider Ingram's indigency. It is those obstacles—application of the § 46-18-231(3), MCA, factors and *Mingus*—which Ingram asks this Court to consider on appeal and which unquestionably were at the center of the arguments he made in the District Court. The Court faults Ingram for not specifically asking that *Mingus* be overruled. But Ingram did ask that the rule enunciated in *Mingus* not be applied to him.

---

[1] Section 46-18-231(3), MCA, provides: "The sentencing judge may not sentence an offender to pay a fine unless the offender is or will be able to pay the fine. . . ." This provision does not except "mandatory" fines from its requirement.

14

¶24    As judges, our profession requires that we apply rules which are, at their origin, designed to achieve fairness. However, strict and confining application of these rules should never be at the expense of fairness and justice. I am confident, given the amount of indigency and poverty in Montana's criminal justice system, that this issue will present itself in a manner more acceptable to the Court. I regret that Ingram, who is unquestionably indigent, will not have the benefit of such consideration and hope that employment he is expected to obtain in the future will be lucrative enough to pay his $5,000 fine and other costs, as the Court appears to suggest. Only because Ingram did not present a clearly articulated constitutional challenge in the District Court as our precedent requires, and because I strongly believe that our decisions are better when made on well-developed records, do I concur with the Court's decision not to address *Mingus* and Ingram's constitutional challenge.

¶25    I would conclude, however, that Ingram's fine, fees, and costs must be reversed because the record establishes Ingram's only source of income to pay those debts is SSDI. The Court correctly observes that Ingram's receipt of SSDI cannot be directly "captur[ed]," Opinion ¶ 11, due to the anti-attachment provisions of 42 U.S.C. § 407(a) ("none of the moneys paid or payable . . . under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process . . ."). *See Bennett v. Arkansas*, 485 U.S. 395, 398, 108 S. Ct. 1204, 1206 (1988) (holding that "the express language of § 407 and the clear intent of Congress that Social Security benefits not be attachable"); *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S. Ct. 590, 592 (1973) (holding that § 407 "imposes a broad bar against the use of any legal process to reach all [S]ocial

15

[S]ecurity benefits"); *Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383, 123 S. Ct. 1017, 1024 (2003) ("execution," "levy," "attachment," or "other legal process" are "terms of art refer[ing] to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization.").

¶26    State courts have addressed the viability of a court order that compels a criminal defendant to use Social Security benefits to pay a judgment.  In *In re Michael S.*, 524 S.E.2d 443, 446 (W. Va. 1999), the West Virginia high court held that a court may not order a juvenile criminal offender to pay costs from his future supplemental security income benefits.  In *In re Lampart*, 856 N.W.2d 192, 203 (Mich. Ct. App. 2014), the Michigan appeals court ruled that a court cannot order payment of restitution from Social Security benefits.  Unlike the current appeal, the Michigan and West Virginia decisions entailed orders to apply Social Security benefits to a criminal defendant's financial obligations.  However, regardless of whether the State actively seeks to seize the offender's Social Security funds and opts instead to maintain an unresolved probationary condition against the offender, the judgment itself is a direct order by a court which violates both the letter and spirit of the anti-attachment statute.

¶27    In *City of Richland v. Wakefield*, 380 P.3d 459 (Wash. 2016), the Washington Supreme Court reversed an order that required Wakefield to pay $15 per month towards her outstanding costs.  Wakefield was homeless, disabled, and indigent.  Her only income was $710 in Social Security disability payments each month.  The Washington Supreme

16

Court rejected the view that § 407(a) prevented only *direct* attachment and garnishment.

After examining Michigan's and this Court's precedent in *Eaton*, the court explained:

> These courts [Michigan and Montana] have rejected the view that the antiattachment provisions prohibit only direct attachment and garnishment, and have instead held that a court ordering LFO [Legal Financial Obligation] payments from a person who receives only [S]ocial [S]ecurity disability payments is an "other legal process" by which to reach those protected funds. This comports with the Supreme Court's key ruling on the definition of "other legal process," which explained that it is a process that involves "some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability."

*Wakefield*, 380 P.3d at 465. The Washington Supreme Court held that "federal law prohibits courts from ordering defendants to pay LFOs if the person's only source of income is [S]ocial [S]ecurity disability." *Wakefield*, 380 P.3d at 466.

¶28 In *Eaton*, this Court considered whether a restitution order requiring monthly payments improperly burdened Eaton's Social Security benefits. The district court ordered Eaton to "make payments equal to 20 percent of his net income per month, from any source, including money he received from his [S]ocial [S]ecurity benefits." *Eaton*, ¶ 10. The State argued that the inclusion of Eaton's Social Security benefits in his net income for purposes of calculating the amount of monthly restitution payments was not an "execution," "levy," "attachment," "garnishment," or "formal legal process" in violation of § 407(a). *Eaton*, ¶ 23. While the State in *Eaton* conceded a direct attempt to levy upon Social Security benefits would violate § 407(a), it urged this Court to conclude there was no violation because Eaton "[could] raise this defense at the time it would seek a levy." *Eaton*, ¶ 26. We rejected the State's suggestion that Eaton must wait for a "levy" to be

17

applied to his Social Security benefits before the anti-attachment provision was implicated, concluding instead that it was "*appropriate to eliminate the offending condition from the judgment in the first instance.*" *Eaton*, ¶ 26 (emphasis added). An important principle from *Eaton* is that Congress intended the words "or other legal process" to be broader in its proscription than the use of formal legal process and sanctions; that is, the State should not be allowed to indirectly obtain what it cannot do directly.

¶29 Here, the Court's decision to uphold an imposition of a debt for a fine and costs when Ingram's only source of income is Social Security benefits cannot be reconciled with the broad reach of *Eaton*. *Eaton* afforded greater protection to the anti-attachment provisions of § 407(a) when it rejected the notion that a formal "levy" was required before the judgment would become offensive. Here, as in *Eaton*, the sentencing order itself constituted the attachment by "other legal process." More particularly, the District Court's sentencing order provided that, as a condition of probation, Ingram was required to pay a $5,000 fine to the Clerk of District Court pursuant to § 46-18-231, MCA. Section 46-18-234, MCA, provides that "[w]henever a defendant is sentenced to pay a fine or costs under 46-18-231 . . . , the court may grant permission for payment to be made within a specified period of time or in specified installments. If no such permission is included in the sentence, the payment is due immediately." As the District Court did not order payment of the fine in installments, Ingram's fine was immediately due. Other provisions of Ingram's sentence impose costs and are similarly immediately due. Moreover, the amount of Ingram's supervision fee is to be determined by Probation and Parole and the "DOC *shall take a portion of the Defendant's inmate account* if the

18

Defendant is incarcerated." (Emphasis added.) Here, the only source of funds in Ingram's account would be his Social Security benefits.

¶30 Very concerning, in my opinion, is the Court's inference that Ingram is required to secure employment and thus may be able to pay his financial obligations without using his Social Security income. The sentencing order does require, as a condition of probation, that Ingram "seek and maintain employment" and that Ingram inform his employer that he is on probation. However, Ingram is disabled under the provisions of 42 U.S.C. § 423(d)(2)(A). Ingram, therefore, has been determined to have a "physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Thus, I disagree with the Court's reasoning which implies fines and costs, that are immediately due and owing, could be satisfied were Ingram to secure employment. I submit that the District Court's sentencing order, imposed upon a criminal defendant whose only source of income is Social Security, is an "offending condition" and should be eliminated in the "first instance." *Eaton*, ¶ 26.

¶31 Fundamentally, however, the Court's attempt to distinguish *Eaton* ignores the realities of indigency and the collateral consequences of a judgment imposed upon indigent defendants whose sole source of income derives from Social Security benefits. The requirement that the offender pay a debt outright, or even a monthly sum towards his obligation, constitutes a condition of his probation or requirement of sentence, and the offender faces penalties for noncompliance. Because of the indigent defendant's inability

19

to retire the judgment, he will be required to submit to potentially more administrative oversight and unable to realize an earlier release from probation. The judgment coerces the indigent defendant to pay the financial obligation from his or her meager Social Security resources if he or she wishes to rid themself of the imposed restrictions and be restored the rights and privileges of a Montana citizen. The lingering judgment against Ingram directly subjects him to constant legal process and indirectly subjects his Social Security money to that process since the money constitutes his sole source of income. The judgment itself is the legal process, and that process constantly applies coercion to an indigent defendant to utilize his Social Security benefits to avoid revocation of his probation or to retire the judgment. Imposition of fines and costs against indigent defendants increase the difficulty of their reentry into society and to their rehabilitation. The inability to pay a fine and costs means that courts retain jurisdiction over impoverished offenders longer than those who are wealthier because, due to their indigency, they cannot pay off their debt and satisfactorily complete the terms of their probation. Legal or background checks will show an active record for individuals who have failed to pay their fines. This active record can have collateral consequences on employment and finances. It affects credit ratings and makes it more difficult to secure housing.

¶32 The Court's reasoning that Ingram's sentencing order does not constitute judicial authorization over his SSDI benefits ignores these realities. Disturbingly, unlike other offenders who pay all legal financial obligations, one who lacks the ability to pay—such as an offender whose sole source of income is Social Security benefits—is not restored to all their civil rights and full citizenship until they use their meager benefits to pay the fine

20

and costs. In most instances, it is unlikely they will ever be successful at paying the debt of a mandatory fine like $5,000. Here, there is no competing right of a victim to receive restitution—imposition of a fine has as its only purpose, the punishment of a criminal defendant.

¶33 For all of these reasons, I would conclude that the District Court's sentencing order constitutes an "other legal process" and an improper attempt to attach Ingram's Social Security benefits in violation of § 407(a).

/S/ LAURIE McKINNON

Chief Justice Mike McGrath and Justice Ingrid Gustafson join in the Dissent of Justice McKinnon.

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON