DA 22-0120

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 44N

FILED

03/05/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0120

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

JACOB JON IDLAND,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC-2021-32
Honorable Michael B. Hayworth, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Joshua James Thornton, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

          Wyatt Glade, Custer County Attorney, Sean A. Quinlan, Deputy County
Attorney, Miles City, Montana


          Submitted on Briefs:  December 13, 2023

                Decided:  March 5, 2024

Filed:

                _____
                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jacob Jon Idland (Idland) appeals from a November 5, 2021 conviction and, in the alternative, certain fees imposed in a January 19, 2022 Sentencing Order in the Sixteenth Judicial District Court. A jury found Idland guilty of Driving While License Suspended or Revoked in violation of § 61-5-212(1)(a)(i), MCA, and Driving Under the Influence of Alcohol (4th or Subsequent Offense) in violation of § 61-8-401(1)(a), MCA (2015).[1] Idland challenges the sufficiency of the evidence against him and argues that a prosecutorial remark prejudiced the jury against him. In the alternative, Idland argues the District Court erred in assessing discretionary fines. We affirm.

¶3 At around 4:20 p.m. on May 8, 2021, Idland was driving on I-94 towards Miles City when he passed a State Trooper (Cartwright), who was driving below the speed limit. Cartwright ran a check on Idland's license plate and driver's license and pulled Idland over for a suspended license. When he approached Idland's vehicle, Cartwright observed multiple indicators of impairment: the smell of alcohol; a can of beer on the floor; and

---

[1] In 2021, the Legislature repealed Title 61, chapter 8, part 4, MCA, and replaced it with Title 61, chapter 8, part 10. Idland was convicted under § 61-8-401, MCA, before the effective date of § 61-8-1002, and thus all references to Title 61 will be to the 2015 Code unless otherwise noted.

Idland's bloodshot, watery eyes, fixed gaze, slurred speech with delayed and confused responses, and fine motor skill issues. Cartwright told Idland about these observations and asked if he had been drinking. Idland stated he had only had one beer but declined to perform field sobriety tests because he was missing a toe. Idland also declined field sobriety tests that would not involve the use of his toe, standing, or walking and a preliminary breath test. Cartwright arrested Idland for driving under the influence (DUI).

¶4 On the way to the detention center, Idland was repeatedly confused about why he was stopped and argued that Cartwright was not allowed to pull him over for a suspended license. His mood shifted several times from friendliness with Cartwright to outright anger at him. At the detention facility, Idland again refused both blood and breath samples.

¶5 Idland was charged with driving while license suspended and driving under the influence of alcohol. He went to trial on November 4 and 5, 2021, and a jury convicted him of both counts. At sentencing, the District Court made findings of fact as to Idland's ability to pay and imposed certain fees and costs as discussed more fully below. Idland appeals the sufficiency of the evidence for his DUI conviction, an allegedly improper comment by the prosecutor during closing, and his ability to pay certain fines imposed.

¶6 Idland argues there was not sufficient evidence in the record for the jury to find beyond a reasonable doubt that he was "under the influence" of alcohol when he was pulled over, in violation of § 61-8-401(1)(a), MCA. Idland argues that there was not sufficient evidence in the record because, in the limited amount of time Cartwright observed Idland's driving before pulling him over, Cartwright did not observe any poor driving behavior or, when he was being escorted from his car to the police cruiser, any balance issues.

3

Essentially, Idland argues that an officer must have observed poor driving performance to sustain a conviction for driving under the influence.

¶7        "'Under the influence' means that as a result of taking into the body alcohol . . . , a person's ability to safely operate a vehicle has been diminished," or "'reduced or to a lesser degree.'"  Section 61-8-401(3)(a), MCA; *State v. Pankhurst*, 2022 MT 89, ¶ 7, 408 Mont. 309, 509 P.3d 15 (quoting *State v. Olson*, 2017 MT 101, ¶ 16, 387 Mont. 318, 400 P.3d 214).  The State is not required to produce evidence of a quantifiable blood alcohol content to prove that a defendant was under the influence.  *City of Helena v. Kortum*, 2003 MT 290, ¶ 22, 318 Mont. 77, 78 P.3d 882.  Instead, the State can introduce "other competent evidence" of the fact that a person is under the effect of alcohol.  *Kortum*, ¶ 22.  In *Kortum*, we described that a standard field sobriety test is but one tool to show a person's diminished ability, and that we have "consistently upheld *a full range* of competent evidence" as sufficient evidence of driving under the influence.  *Kortum*, ¶ 22 (emphasis added).

¶8        Idland relies on *Kortum* to argue that poor driving is a necessary factor to show that a defendant was under the influence.  But *Kortum* does not stand for this proposition: "The manner in which a vehicle is driven *can* be evidence of driving under the influence of alcohol."  *Kortum*, ¶ 22 (emphasis added).  Though some evidence is sufficient by itself, no single piece of evidence is necessary under our case law.  Rather, the jury may determine from the full range of competent evidence that the defendant was under the influence.

¶9        Although the jury did not receive evidence of Idland's blood alcohol content, nor was Cartwright following Idland long enough to observe any instances of poor driving, the Jury heard sufficient evidence to support Idland's conviction for DUI.  We review whether

4

there was sufficient evidence in the record to support a conviction by examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCarthy*, 2004 MT 312, ¶ 46, 324 Mont. 1, 101 P.3d 288.

¶10    The jury heard Cartwright's testimony, who observed the odor of alcohol coming from the vehicle and an unopened can of beer on the floor; that Idland had bloodshot, watery eyes and a fixed gaze during their conversation; that Idland had delayed and slurred speech; that Idland quickly vacillated between friendly and angrily swearing at Cartwright; and that Idland admitted to drinking that day.  Additionally, the jury heard that Idland refused all field sobriety tests and breath and blood tests, which allowed the jury to infer that Idland was under the influence.  Section 61-8-404(2), MCA; *City of Missoula v. Robertson*, 2000 MT 52, ¶ 40, 298 Mont. 419, 998 P.2d 144.  The jury also watched video of the traffic stop and Idland's ride to the detention facility, which contained numerous instances of Idland's confusion about where he was, why he was stopped, and argument about whether it was legal to stop Idland for driving with a suspended license.[2]

¶11    Idland also argues that, unlike in *Robertson*, Cartwright did not observe any balance or mobility issues with Idland.  But, like *Kortum*, no single issue is dispositive or necessary for a jury to conclude, among the State's showing of other competent evidence, that Idland was under the influence.  *See Robertson*, ¶ 47 (noting that Robertson showed an obvious

---

[2] Although Idland does not specifically challenge the vehicle stop by Cartwright, he implies it was illegal.  Law enforcement can legally stop a vehicle once that officer has ascertained that the registered owner's license has been suspended.  *See* §§ 46-5-401, 61-5-212, MCA.

lack of balance *in addition to* slurred speech, the smell of alcohol, refusal to submit to a breathalyzer, and failure of two other field sobriety tests). When the evidence is taken in the light most favorable to the prosecution, a rational juror could have found Idland guilty of driving under the influence beyond a reasonable doubt.

¶12 Idland next argues that the prosecutor violated Idland's right to a fair trial with an improper remark during rebuttal closing. Idland argues that the prosecutor commented on facts not in evidence when he said:

> [D]efense counsel keeps bringing up the search warrant requirement. Part of the testimony that she simply just asked whether it was yes or no, did he get the search warrant? And Trooper Cartwright testified, no, he did not get the search warrant.
> The other question she asked was, did he know the prerequisites of what would allow him to get the search warrant? And he was allowed to say "yes" but not what those prerequisites are.
> And defense counsel wants to hammer away at these prerequisites to a search warrant -- telephonic search warrant for blood but wants to avoid what those pre --

Defense counsel objected at this point, and the District Court cautioned the jury that:

> The Court did make some rulings . . . and here the Court did make a ruling that so limited the evidence.
> If you are to hold it against anyone, then you hold it against the Court. But the specific prerequisites are not relevant for your consideration here. Echoing what was said in the cautionary instruction, you are to be focused on the events of May 8th, 2021.
> It doesn't matter what happened before. Doesn't matter what happened since. Only questions that are before you are questions related to May 8th, 2021.

After the jury was excused, the State renewed its objection to the defense opening the door to the requirements for a search warrant when the State would not be allowed through it. Despite the prosecutor's unfinished statement and the court's cautionary instruction to the

6

jury, Idland argues that the prosecutor added a prejudicial fact into the record that influenced the jury—that he had prior DUIs.

¶13    Substantive due process, as applicable through the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Sections 24 and 26, of the Montana Constitution, guarantee criminal defendants the right to a fair trial before an impartial jury and the presumption of innocence. *State v. Miller*, 2022 MT 92, ¶ 21, 408 Mont. 316, 510 P.3d 17. "Prosecutorial comments . . . that substantially undermine or infringe upon those fundamental constitutional rights improperly violate those rights and are remediable by reversal of conviction if substantially prejudicial to the accused under the totality of the circumstances in each case." *Miller*, ¶ 21. As such, a prosecutor may not assert or comment on facts not in evidence in the case. *Miller*, ¶ 23.

¶14    When defense counsel objected, the prosecutor had only recounted that defense counsel had asked Cartwright about search warrant requirements. Idland's briefing shows that the alleged improper comment was what he thinks *might* have been said had the prosecutor continued, rather than what he *had already* said: "Here, the prosecutor waited until rebuttal closing to *attempt* to inject evidence of Idland's past DUI convictions. The prosecutor *attempted* to fault Idland for . . . ." (Emphasis added.)

¶15    Idland argues that these comments were improper because they encouraged the jury to fault Idland for inadmissible evidence of prior DUIs not in the record. The fact is that the prosecutor never injected those facts into his closing arguments. A defendant must demonstrate, based on the record in the context of the case in its entirety, that the improper comment substantially prejudiced his right to a fair and impartial trial. *Miller*, ¶¶ 27, 36.

7

¶16    The statement was never completed.  The District Court then cautioned the jury that the prerequisites to obtaining a search warrant were not relevant to the jury's consideration. Idland has not met his burden to show that the prosecutor's unfinished statement substantially prejudiced his right to a fair and impartial trial.

¶17    Finally, Idland argues that the District Court abused its discretion when it imposed certain discretionary fines.  Over three separate sentencing hearings, the District Court inquired into Idland's finances and ability to pay any imposed fees.  Idland answered some questions about his ability to pay fees but was largely uncooperative with the process.  At one point Idland asserted his right to remain silent and refused to answer any further financial questions.  The court cautioned Idland that it was required to delve into Idland's finances and that depriving it might result in some error on the court's assessment of Idland's ability to pay.  In further questioning by Idland's counsel as to his income, Idland answered:

> [Idland]:  It varied.  I wish not to answer any more of these questions.
>
> [Defense Counsel]:  So you understand, Mr. Idland, that these are the questions that we have to ask in order to make an argument that you will struggle paying [the fees] financially?
>
> [Idland]:  Sure.
>
> [Defense Counsel]:  Are you willing to answer the questions?
>
> [Idland]:  No.  I am done answering financial questions.  I have a witness here.

Despite his lack of cooperation, the court was able to determine some facts about Idland's finances over three hearings: he made between $10,000 and $25,000 a year prior to his

8

arrest; he is readily employable and will be able to return to full-time employment when released; his assets include a 2001 Subaru, with a value of up to $1,000; and his debts include $500–$600 in credit card debt and $10,000 in student loans. Finally, Idland does not have any other bills because he lives with his mother who covers other expenses.

¶18 After the testimony, the court imposed $8,525 in charges and fines, $2,850 of which was suspended, which it found Idland would be able to pay because of his employability and his low living expenses while living with his mother. Idland challenges only the discretionary fines: $515 in conviction surcharges and a $50 crime victim advocate surcharge pursuant to § 46-18-236(1), MCA, which must be waived if the court determines the defendant is unable to pay; a $10 information technology surcharge pursuant to § 3-1-317(1)(a), MCA, which may be waived if the defendant is unable to pay; a $100 cost of prosecution fee pursuant to § 46-18-232(1), MCA, which may not be imposed unless the defendant will be able to pay it; and the $2,850 cost of assigned counsel fee pursuant to § 46-8-113(1), MCA, which the court suspended unless Idland's probation was revoked.

¶19 We review sentencing conditions, such as fines, first for legality and then for abuse of discretion as to the conditions' reasonableness under the facts of the case. *State v. Ingram*, 2020 MT 327, ¶ 8, 402 Mont. 374, 478 P.3d 799. A district court's determination that a defendant is able to pay an imposed cost is essentially a finding of fact that we will reverse only if it is clearly erroneous. *State v. Daricek*, 2018 MT 31, ¶ 7, 390 Mont. 273, 412 P.3d 1044.

¶20 Idland does not dispute the legality of the charges imposed upon him. Instead, Idland disputes the court's findings of fact on his ability to pay, but he does not point to

9

any evidence in the record that shows the majority of his wages are not disposable after his student loan and credit card bills are paid. Indeed, Idland cannot point to any conflicting evidence because he refused to cooperate both with the pre-sentence investigation and with questions into his finances at the hearing. Thus, we cannot say that the District Court's finding is clear error.

¶21 Idland also argues that the District Court abused its discretion by assessing more than just the mandatory fines, which he argues would better set him up for success. Idland argues that, assuming a $40,000 annual salary, Idland's total fine of $8,525 would account for 20% of annual income, but that assessing only the mandatory fines of $5,000 would be far more feasible at 12.5% of annual income and would better set him up for success, while still holding him accountable. Our review is limited to whether the District Court abused its discretion in imposing the fees. *Ingram*, ¶ 8.

¶22 The District Court took into account both the nature of the offense committed, which is Idland's fourth DUI, and the burden that payment of the fine would impose by suspending that portion of the fees. Section 46-18-231(3), MCA. Further, the District Court imposed no requirement that Idland pay the remaining $5,675 in a single year.

¶23 Nor did the District Court fail to demonstrate a serious inquiry into Idland's ability to pay. Over three hearings, the court repeatedly admonished Idland to cooperate with its questioning so that it could accurately evaluate Idland's ability to pay. With Idland's terse, inconsistent answers, and his refusal to answer many other questions, the court received only limited evidence on Idland's ability to pay.

¶24 Finally, we note that the court's Sentencing Order invited Idland to "later petition the court for remission of the payment of costs or of any unpaid portion of the costs based on manifest hardship." *Accord* § 46-8-113(5), MCA. The court found that Idland would likely be able to pay the costs imposed with his employment after treatment but allowed him to seek remission if that was not the case. This was not an abuse of discretion.

¶25 There was sufficient evidence in the record to support Idland's conviction and there was no substantial prejudice to Idland by the prosecutor's unfinished comment. The District Court did not abuse its discretion in imposing discretionary fees.

¶26 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶27 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE